[S. F. No. 13514. In Bank.—November 25, 1931.]

FELIX J. KUNZ, as Administrator, etc., Respondent, v. THE ANGLO & LONDON PARIS NATIONAL BANK OF SAN FRANCISCO (a Corporation), Defendant; HARRY BLANDING, Intervener and Appellant.

342

Francis C. Brown and Richard Busteed for Appellant.

Charles L. James, C. K. Bonestell and Horace V. Ley for Respondent.

WASTE, C. J.—Respondent's intestate deposited in escrow with the Anglo and London Paris National Bank of San Francisco a deed covering certain mining claims, with instructions to deliver the same to one H. W. Wernse, the grantee named therein, upon the payment by him of $2,500 within a specified period; otherwise the deed to be returned to the depositor. Within the time prescribed in the escrow instructions, but subsequent to Lee's death, Wernse paid $2,500 to the bank and received the deed. This action was thereupon brought by the respondent, as administrator of Lee's estate, to recover the money. In its answer, the defendant bank averred that the plaintiff and the intervener had made inconsistent claims upon it for the fund, that it was ignorant of the merits of these respective claims, and prayed that upon depositing the money in court it be dismissed from the action and the adverse claimants made to interplead, all of which was done. Judgment was entered awarding the fund to the respondent, as administrator of Lee's estate, whereupon the intervener prosecuted this appeal.

Appellant's claim to the money is founded upon the following instrument executed and delivered to him by Lee:

"Bill of Sale.

"Know All Men By These Presents: That I, A. H. Lee, of Las Vegas, Clark County, Nevada, the party of the first part, for and in consideration of the sum of ten dollars lawful money of the United States to me in hand paid by Harry Blanding, of Las Vegas, Clark County, Nevada, the party of the second part, the receipt and adequacy whereof is hereby acknowledged, do by these presents, grant, bargain, sell, convey, and set over unto the said party of the

second part, and to his executors, administrators, heirs and assigns, all right, title, interest, and claim whatsoever, I am now possessed of or may hereafter acquire, in or to or under that certain escrow agreement made by and between A. H. Lee, and H. W. Wernse, and deposited with the Anglo and London Paris National Bank of San Francisco, California, with escrow instructions dated April 26, 1926.

"And I hereby nominate, constitute and appoint the said Harry Blanding, my attorney in fact, irrevocable, for me and in my name and place and for my use and benefit, to demand, sue for, collect, and receive all such sums of money or demands whatsoever, as are now or shall hereafter become due, owing, payable or belonging to me, under or in anywise arising from or out of the above mentioned escrow, or the agreement or deed or papers deposited therewith, and with full authority to the said Harry Blanding to make any and all compromises or agreements connected therewith as he shall deem wise or necessary, and to, in my name execute any and all discharges therefor as may be wise or necessary.

"Giving unto my said attorney full power to perform every act and thing which he may deem wise or necessary to be done in or about the premises, in my name and stead, as fully to all intents and purposes as I might or could do if personally present, I hereby ratifying and confirming all that my said attorney in fact, the said Harry Blanding, shall lawfully do or cause to be done by virtue of these presents.

"In witness whereof, I have hereunto set my hand and seal the 24th day of May, 1926.

"(Seal and Acknowledgment.)       A. H. LEE."

The appellant contends that this so-called "Bill of Sale" created an irrevocable agency or power coupled with an interest which survived Lee's death, thus entitling him to the escrow fund. The leading case on the subject is *Hunt* v. *Rousmaniere*, 8 Wheat. (U. S.) 174, 204 [5 L. Ed. 589], wherein Mr. Chief Justice Marshall declared: "We hold it to be clear that the interest which can protect a power after the death of a person who creates it must be an interest in the thing itself. The words themselves would seem to import this meaning. 'A power coupled with an interest' is a power which accompanies or is connected

with an interest. The power and the interest are united in the same person. But if we are to understand by the word 'interest' an interest in that which is to be produced by the exercise of the power, then they are never united. The power to produce the interest must be exercised, and by its exercise is extinguished. The power ceases when the interest commences, and therefore cannot in accurate law language be said to be 'coupled' with it. The interest or title in the thing being vested in the person who gives the power, remains in him unless it be conveyed with the power, and can pass out of him only by a regular act in his own name."

Even a most cursory reading of the above-quoted "Bill of Sale" discloses that the appellant is not thereby invested with any beneficial interest or estate in the escrow fund now claimed by him. By its very terms the instrument appoints and designates the appellant as Lee's agent or attorney-in-fact solely for the purpose of collecting and holding the escrow fund for Lee's "use and benefit". The latter's demise revoked and canceled this unexecuted naked power or agency and terminated any and all rights of the appellant thereunder. (Sec. 2356, Civ. Code; 1 Cal. Jur. 703, sec. 12.)

An instrument bearing a marked similarity to the one under which the appellant here makes claim was before this court for construction in the case of *Todd* v. *Superior Court*, 181 Cal. 406 [7 A. L. R. 938, 184 Pac. 684]. In that case the principal, for a named consideration, had purported to transfer and assign to an attorney-in-fact all of her right, title and interest in and to certain legacies, the instrument expressly stating that it was to be "construed as a power of attorney, coupled with an interest in the subject matter thereof". However, at the conclusion of the instrument the following appeared: "After deducting the interest herein assigned, and his expenses and outlays in and about performing his duties, said attorney-in-fact shall remit the balance of the funds on hand to me through his corresponding bank." After stating that this court was not bound by the parties' designation of the power as one "coupled with an interest", the court in that case construed the instrument as a whole, and declared that the chief and predominating purpose of the constituents

was not "to create a power coupled with an interest and thus an irrevocable agency, but rather to make an assignment in trust to the attorney-in-fact *in order to facilitate the collection of the legacies,* and to insure the reimbursement of the attorney-in-fact for his outlays, and for compensation for his services". Continuing, the court stated: "Nor can the creation of a trust, which has placed the bare legal title in the attorney-in-fact, *with a corresponding duty to account,* be considered upon any theory as conferring upon the attorney-in-fact such a beneficial interest as to render the power irrevocable. Fairly considered, the contract herein creates a trust with a corresponding duty to account. It has no meaning other than this." (Italics ours.)

This language fits the present case exactly, for while the first paragraph of the instrument under which the appellant makes claim purports to assign the escrow fund to him, a reading of the entire instrument clearly discloses that the assignment was made solely for the purpose of facilitating the collection of the fund which the appellant was to hold in trust for the "use and benefit" of respondent's intestate. Appellant's attempted distinction of the instrument involved in the Todd case, *supra,* from that involved in the case at bar, upon the ground that the former expressly provided for the accounting or paying over of the fund by the attorney-in-fact to the principal, is clearly without merit. The instrument in the present case, as already indicated, expressly provides that the escrow fund is to be collected and received by the appellant for the "use and benefit" of the respondent's intestate. Language more definitely requiring the appellant to account for and pay over any funds coming to him under the instrument cannot be phrased.

Upon several occasions during the trial the appellant sought to prove by parol evidence that the so-called "Bill of Sale" running in his favor, rather than being a mere assignment for purposes of collection, as the instrument in so many words provides, was in fact intended by respondent's intestate to be absolute in form and effect, and to be in partial satisfaction and discharge of an indebtedness then asserted to be owing by respondent's intestate to the appellant. In other words, the appellant attempted to show by

parol that it was the intention of respondent's intestate to convey to him the entire beneficial interest in the escrow fund. Objections to this line of examination were repeatedly sustained by the trial court, and we find no error in the rulings. If admitted, this evidence would have worked a material alteration in the terms of the written instrument, for it would have tended to establish the assignment to appellant as an absolute and beneficial one, when, in fact and by its terms, it constituted but a bare power of attorney for collection. This being so, the proffered testimony was properly excluded under the parol evidence rule. The very authorities cited by the appellant establish the fallacy of his argument in this regard. For instance, in support of his contention that evidence of a contemporaneous oral agreement is admissible, he refers us to 10 Cal. Jur. 927, wherein the following appears: ■ "Evidence of a contemporaneous oral agreement *as to any matter upon which the instrument is silent, and which is not inconsistent with its terms,* cannot be said to contradict or vary the terms of the written intrument. But, of course, where the evidence of a contemporaneous oral agreement *conflicts with the plain terms of a written contract, it is inadmissible.*" (Italics added.) The evidence here sought to be adduced conflicts with the written instrument. There is ample authority to support the trial court's rulings on this evidence. In *United Iron Works* v. *Outer H. etc. Co.,* 168 Cal. 81, 84 [141 Pac. 917], it is held that it is never within the contemplation of the parol evidence rule that "a contract reduced to writing and executed by the parties shall have anything added to it or taken away from it by such evidence of 'surrounding circumstances'. This rule of evidence is invoked and employed only in cases where upon the face of the contract itself there is doubt and the evidence is used to dispel that doubt, not by showing that the parties meant something other *than* what they said but by showing what they meant *by* what they said." Then, again, in *Keifer* v. *Myers,* 14 Cal. App. 338, 340 [111 Pac. 1038], it is declared: "The rule in the Pierce case [*Pierce* v. *Robinson,* 13 Cal. 125], as in all cases which have come under our observation, wherein the right to prove by parol facts tending to establish a contract different from that expressed by the language of the instrument, is confined to those cases

where an equity is sought to be shown superior to the terms of the instrument, which equity a court of chancery will enforce by annulling or reforming the instrument, or limiting its operation, or enjoining its use. Under this rule, deeds may be shown to be mortgages, and other instruments purporting to grant absolute rights may be shown to have been intended to possess some limited character. But the right to defeat *an expressed equity* by destructive parol proof is not comprehended within the rule. In our opinion, the written agreement of pledge cannot be shown by parol to be an agreement of absolute sale, no more than a mortgage, which is but a lien, may by parol be shown to have been intended as a grant of the property described. That in cases of the nature here presented evidence is not admissible *dehors* the instrument to establish a character different from that expressed by the language employed.'' [Italics added.] To admit the parol proof offered by the appellant would be to destroy an ''expressed equity'' and make absolute what was intended to be merely tentative and qualified.

In line with the trial court's rulings, it is our conclusion, therefore, that the intention of the parties to the ''Bill of Sale'' is clearly disclosed by the writing, the instrument being susceptible of but one construction, viz., that it created a bare power of attorney or agency for collection of the escrow fund, which power or agency terminated with the death of the principal. It follows, therefore, that the evidence was properly excluded.

At or about the time of the execution and delivery of the instrument by which appellant was appointed the attorney-in-fact of respondent's intestate to collect the escrow fund for the latter's benefit, there was also executed and delivered by said intestate a deed, introduced in evidence by the appellant, purporting to convey to appellant the several mining claims covered by the deed theretofore placed in escrow and running in favor of Wernse. Appellant's deed being subsequent in point of time to the escrow deed, of which escrow deed the appellant had knowledge, was, of course, subject and subordinate to the Wernse deed. Though mentioned, this fact is not of particular moment here, in view of subsequent developments, for Wernse, the escrow grantee, fully complied with the escrow instructions, and took title to the mining claims. Appellant's deed, being

subject thereto, thereupon became *functus officio* and of no effect as a medium of transfer. He now urges, however, that the trial court should have made a finding as to the effect, if any, said deed had upon his right to the escrow fund. That is to say, appellant contends that the delivery of the deed to him in some way strengthened his claim upon the escrow fund and the trial court should have made a finding thereon. We cannot agree with this contention. We fail to see what different result would have followed had such a finding as is suggested been made. █ In the first place we are not entirely satisfied that the trial court as urged by the appellant was obliged to read the power of attorney and the deed together as part and parcel of the same contract. Section 1642 of the Civil Code provides that ''Several contracts relating to the same matters between the same parties, and made as parts of substantially one transaction, are to be taken together.'' Though executed at or about the same time and between the same parties, the instruments do not relate ''to the same matters''. The deed purports to convey certain mining claims, while the ''Bill of Sale'' or power of attorney merely provides for the collection of an escrow fund. Obviously, the former was not to take effect if the subject matter of the latter should materialize, and it did materialize. In other words, the two instruments were not only independent of each other, but in a sense they were antagonistic, and could not operate together. The appellant apparently realized this, for in his complaint in intervention (paragraphs 2, 3 and 4 thereof) he pleads each as being a complete contract— the power of attorney as an absolute assignment to him of the $2,500 escrow fund, and the deed as conveying to him Lee's title to the mining claims, subject to the rights of Wernse, the escrow grantee. There is no allegation that the deed was delivered as part of a contract by which the respondent's intestate transferred to the appellant the beneficial interest in the escrow fund.

█ However, even if the deed were to be read and construed with the instrument appointing appellant as attorney-in-fact for the collection of the escrow fund, we would be required, so far as possible, to give effect to the terms of each instrument, so as to effectuate the expressed intention of the parties. (Sec. 1641, Civ. Code.) This being so,

the deed would have to be construed, as we have already interpreted the purported assignment of the escrow fund, as simply a means adopted by the respondent's intestate to facilitate the appellant in the discharge of his duties as attorney-in-fact for the collection of the escrow fund, which fund, as we have already shown, the appellant was to receive and hold for the "use and benefit" of respondent's intestate. The deed could have no effect other than this, if we are to read the two instruments together and give effect to the predominating desire and purpose of the intestate to have the escrow fund collected and held for his "use and benefit".

What we have said sufficiently disposes of appellant's contentions. Examination of the entire record satisfies us that the findings, which are sufficiently full and complete, are amply supported by the evidence, and warrant the judgment entered.

The judgment is affirmed.

Curtis, J., Preston, J., Seawell, J., Richards, J., Shenk, J., and Langdon, J., concurred.