[Civ. No. 14512.   Second Dist., Div. Three.   Feb. 9, 1945.]

EDNA H. PAGEL, Respondent, v. EVERETT S. SHIPP, Appellant.

<hr>

J. Edward Haley for Appellant.

Reginald I. Bauder for Respondent.

FOX, J. pro tem.—This is an action for declaratory relief. Plaintiff, the former wife of defendant, Shipp, seeks an interpretation of a community property and support agreement (hereinafter called the agreement) entered into by said parties on August 2, 1932, and also an interpretation of a declaration of trust entered into at or about the same time by said parties and the California Trust Company, as trustee, for the purpose of carrying out certain of the provisions of the agreement. The action was dismissed as to the defendant Trust Company. The defendant Shipp appeals from a judgment in favor of the plaintiff.

On September 15, 1932, plaintiff obtained an interlocutory decree of divorce from the defendant Shipp (hereinafter called the defendant). She was granted custody of the minor children of the parties and the agreement was approved by the court. This decree became final on September 21, 1933. At the time of the trial of this action the children had attained their majority.

The agreement, after appropriate recitals concerning the marital and family status of the parties and of their com-

munity property holdings, provides that "The party of the first part [defendant] undertakes and agrees to pay to the party of the second part [plaintiff], for and during her natural life, the sum of Three Hundred and Fifty Dollars ($350.00) per month. . . ." The agreement continues in paragraphs 3 to 6 to make provision for the support and custody of the minor children and for the immediate disposition of certain community, personal and real property.

Paragraph 7 sets up a scheme for securing to the wife the payment of the monthly sum of $350. In general, it provides for the creation of a trust containing as its res certain securities which had previously been listed as community property. So long as the husband is not in default, the agreement provides he may exercise all the incidents of ownership, including the collection of dividends, voting the stock and the right, within certain specified limits, to substitute other securities. Then follows a detailed enumeration of the conditions that shall constitute a default under said trust. Number 5 of said conditions is here important and provides that a condition of default shall exist when "the party of the first part shall fail to pay for the period of sixty (60) days, after written demand, to the party of the second part, at the time specified, any of the payments herein provided to be paid by the party of the first part to the party of the second part." The agreement then provides that "Should a condition of default exist under said trust, and the party of the first part fail to remedy the same within sixty (60) days after demand for such performance, the Trustee shall, *at the request of the party of the second part* [wife], register said stocks in its name as Trustee and proceed to liquidate said trust property and convert the same into cash . . ." (italics added) and out of the proceeds of the liquidation the trustee shall retain in what is designated as a "secondary trust" $75,000 (if such an amount is realized from said liquidation) and pay any surplus to first party. Should the liquidation yield $75,000 to the secondary trust the husband would be relieved of further payments to the wife. If, however, $75,000 should not be realized from such liquidation then the husband would be required to pay such additional sums as, when added to the net income from the secondary trust, shall equal $350 per month.

Paragraph 8 reads as follows: "The party of the first part, his successors and assigns, shall, at any time before liquidation

for the trust and default as herein provided, have the right and privilege of paying to the Trustee the sum of $75,000.00, and having received a reassignment of all of the trust assets, and said $75,000.00, shall be held by the Trustee in place and stead of the securities herein provided for. Should such substitution take place after the commencement of liquidation, it shall be only upon the condition that all contracts entered into by the Trustee in connection with liquidation, shall be assumed, and proper security given for such performance by first party or his successors."

The remaining paragraphs of the agreement contain nothing that is relevant to the issues here involved.

Pursuant to the agreement the parties made a conveyance in trust of the properties therein described to California Trust Company. That company then executed the said declaration of trust which follows and carries out the provisions of the agreement.

The second paragraph of the declaration of trust provides that *"so long as the Trustor, Edna H. Shipp does not instruct it to the contrary,* pursuant to her right as hereafter provided, *the Trustee shall hold the original property* deposited with it at the inception of this Trust in the name of the Trustor, Everett S. Shipp, without transferring said property on the books of the corporation or corporations to the name of the Trustee. Insofar as the Trustee is concerned the said Everett S. Shipp, shall, until it has been notified as [sic] a default, as hereinafter provided, retain unto himself alone the sole right and privilege to vote all corporate stock and to receive all income, profits and dividends of any nature whatsoever therefrom. . . ." (Italics added.) Said paragraph also provides: *"At any time the said Edna H. Shipp files with the Trustee an affidavit and certificate, stating and declaring that there has been default by the said Everett S. Shipp of one or more of the obligations imposed upon him by the terms of said Agreement, that demand has been served upon him in the manner required by the terms of said Agreement, and that the said Everett S. Shipp has not cured such condition of default in the time prescribed by said Agreement, and accompanies such affidavit and certificate with the request that the Trustee assume full management and control of the Trust Estate, then in that event the Trustee shall assume full management and control. . . ."* (Italics added.) This paragraph further provides that the trustee shall proceed to liquidate

the trust property and convert it into cash, $75,000 of which shall go into the secondary trust and be managed by the trustee and any surplus forthwith paid over to defendant. It is then provided that "At any time the said Everett S. Shipp and/or his successors in interest, deposits the sum of Seventy-five Thousand Dollars ($75,000.00) with the Trustee, then said Trustee is authorized to distribute the *entire balance of the Trust Estate, exceeding the secondary Trust hereunder,* to the said Everett S. Shipp, or his nominee, or successor, but it may require indemnity satisfactory to it against any claims or liabilities to which it may be then subject. Thereupon said Trustee shall assume full management and control of said sum of Seventy-five Thousand Dollars ($75,000.00) and the same shall constitute *the secondary Trust hereunder.*" (Italics added.)

The remaining paragraphs of the declaration of trust deal with the mechanics of the administration of the trust res by the trustee and are not here material.

The defendant contends that under these two documents he has the right (1) to arbitrarily create a condition of default thereunder by refusing (and he in fact has refused) to pay plaintiff the sum of $350 per month and thus set in motion the secondary trust provided for therein; or (2) deposit at any time, either before or after default, the sum of $75,000 in cash, receive from the trustee the securities which he had deposited with it, and be relieved from further payments to the plaintiff.

The trial court held (1) that the right to declare a default and to set in motion the secondary trust was vested exclusively in the plaintiff; (2) that as long as plaintiff does not exercise said option the obligation of defendant to pay to plaintiff $350 per month during her natural life continues in full force and effect; (3) that defendant cannot arbitrarily create a condition of default so long as he is able to comply with the terms of said agreement providing for said monthly payments of $350 to plaintiff; (4) that in the event plaintiff exercises her option to set in motion the secondary trust, defendant may, before actual liquidation of the assets of the trust, substitute the sum of $75,000 in lieu of the property in the hands of the trustee, and in that event, or in the event that the liquidation of said property yields net proceeds in the sum of $75,000, or in excess thereof, defendant is relieved of any further obligation to pay plaintiff $350 per month;

if, however, such liquidation yields a net sum less than $75,000 then defendant is obligated to pay plaintiff the difference between the income that such lesser sum shall yield in the hands of the trustee and the monthly sum of $350.

In our opinion the trial court correctly interpreted the agreement and declaration of trust.

In arriving at its decision the trial court took the position that the said documents were neither ambiguous nor uncertain and therefore excluded extrinsic evidence of the intention of the parties. Defendant challenges this ruling. In our opinion it was correct.

The agreement and the declaration of trust must be read together for they are both essential to the complete property settlement and support arrangement which the parties entered into. They must also be construed together and as a whole in order that the elaborate mechanism, by which the property rights of the parties were to be secured for the future, may be made effective.

On the question as to which of the parties had the right to declare a default and set the secondary trust in motion reference should first be made to the paragraph in the agreement that immediately follows the five paragraphs (the last of which is hereinbefore quoted) which set out in detail the various situations that must exist before a default may be declared. It is provided in that paragraph that should a condition of default exist under the trust, and the husband fail to remedy the same within sixty days after demand therefor, "the Trustee shall, *at the request of the party of the second part* [wife], register said stocks in its name" and proceed to liquidate the trust property and convert it into cash. (Italics added.) The secondary trust is thereby and thereupon put into operation. The existence of a condition of default is not sufficient to put the secondary trust in operation. Such condition must be declared and the only person mentioned in the agreement who is authorized to take such affirmative action is the wife.

Reference should next be made to the provisions of paragraph 2 of the declaration of trust hereinbefore quoted. It will be noted that under that provision the trustee is to hold the *original* trust property in the name of defendant without transferring the same on the books of the corporations to the name of the trustee *"so long as the Trustor, Edna H. Shipp does not instruct it to the contrary."* (Italics added.)

In harmony with this provision is the statement in the next sentence that defendant shall retain the sole right to vote all corporate stock and receive all dividends therefrom until the trustee has been notified of a default "as hereinafter provided." The only provision *thereafter* (or elsewhere) made in the declaration of trust for notifying the trustee of a default follows in the same paragraph and is quoted herein. This provision requires the trustee to assume full management and control of the trust estate and proceed to set up the secondary trust *if* and *when the plaintiff files with the trustee* an affidavit and certificate stating the necessary facts and accompanies such affidavit and certificate with a request therefor. It is clear from these provisions that the right to declare a default and set the secondary trust in motion is vested exclusively in the plaintiff. We find nothing in either the agreement or in the declaration of trust which tends to negative this interpretation.

What has been said on the previous point answers in part defendant's contention that he had the right to deposit with the trustee at any time, either before or after default, $75,000 in cash and be relieved from further payment to the plaintiff. The provision in the declaration of trust that the trustee shall hold the *original property* deposited with it at the inception of this trust in the name of defendant, without transferring it to the name of the trustee, so long as the plaintiff does not instruct the trustee to the contrary pursuant to her right so to do in the manner thereafter provided, shows clearly there was no right in defendant to substitute cash for the deposited securities until and unless a condition of default had been declared by plaintiff. The provision in the declaration of trust giving the defendant the right to deposit $75,000 with the trustee and receive back the original trust property does not appear until after the provision relating to liquidation of the trust in the event of a declaration of default. This provision for the deposit of $75,000 was unmistakably put in the declaration of trust as an alternative to the provision for liquidation of the trust estate in order to give the defendant an opportunity to get back the deposited securities which represented the majority stock of certain corporations so that he would not lose the same and thereby lose control of the corporations. That it was intended as an alternative to liquidation, and to be exercised even after liquidation had been commenced, is empha-

sized by the provision that upon the deposit of $75,000 in cash with the trustee, then the trustee is authorized to distribute to the defendant or his nominee "the entire *balance of the Trust Estate*, exceeding the secondary Trust hereunder." (Italics added.) It is further provided, in such event, that the trustee may require satisfactory indemnity against any claims or liabilities to which it may be then subject. This is of course for the purpose of protecting the trustee on any commitments it may have made up to that point in the liquidation of the trust. But it also serves to show that the right of defendant to make the $75,000 cash deposit with the trustee is alternative to liquidation and does not exist unless there has been a declaration of default by the plaintiff which calls for liquidation of the trust. These observations apply with equal force to the provisions of paragraph 8 of the agreement herein quoted on which defendant strongly relies. That paragraph in the agreement does not make its appearance until after the conditions of default have been enumerated and the provisions for liquidation of the trust set forth. Here it is provided that "Should such substitution [the deposit of $75,000 in cash] take place after the commencement of liquidation" the defendant shall assume all contracts entered into by the trustee in connection therewith and give proper security for their performance. This paragraph of the agreement when read in its entirety and when considered in relation to the other provisions of the agreement is entirely consistent with the corresponding provision of the declaration of trust, and shows that the right of defendant to deposit $75,000 with the trustee and get back the deposited securities is simply alternative to the liquidation provision and not operative unless the necessary steps have been taken by the plaintiff to direct the trustee to liquidate the original trust and set up the secondary trust.

If it had been intended that the defendant should have the right at any time to deposit $75,000 in cash with the trustee and thereupon get back the trust securities it would have been very simple and easy to make that statement. If that had been the intention of the parties then the entire procedure for bringing the secondary trust into being would have been superfluous. In this connection it should also be pointed out that provision is made in the agreement (prior to the statement of what shall constitute conditions of default under the trust) for the *substitution of securities* of one corpora-

tion for those of another (within certain specified limits) upon request of the defendant. If it had been intended that defendant should have the arbitrary right to substitute *money* for *securities* this would have been an appropriate place to so provide. As it is, the provision for substituting *money* does not make its appearance until the conditions of default have been carefully defined and provision made for liquidation of the trust in the event plaintiff declares that a condition of default exists. This is an additional indication that the provision giving the defendant the right to deposit $75,000 in cash with the trustee and receive back the original trust property is an alternative to the liquidation provision.

The interpretation by the trial court of the agreement and declaration of trust is in accordance with the intention of the parties as therein expressed. The documents are clear and, when read together and in their entirety, disclose a complete picture of the adjustment of the property rights of the parties and the plan by which the monthly payments by the defendant to the plaintiff were protected and secured. There was no error therefore in excluding extrinsic evidence of the intention of the parties. (*Chiarello* v. *Axelson* (1938), 25 Cal.App.2d 157 [76 P.2d 731]; *Hutchinson* v. *Hutchinson* (1941), 48 Cal.App.2d 12 [119 P.2d 214]; *Barnhart Aircraft, Inc.* v. *Preston* (1931), 212 Cal. 19 [297 P. 20].)

The judgment is affirmed.

Desmond, P. J., and Wood (Parker), J., concurred.