**DAUGHERTY v. MISSOURI–KANSAS–
TEXAS R. CO. OF TEXAS.**

No. 9809.

Court of Civil Appeals of Texas. Austin.

June 22, 1949.

Taylor & Taylor and Henry Taylor, Temple, for appellant.

Naman, Howell & Boswell and William J. Boswell, Waco, for appellee.

HUGHES, Justice.

This suit is for damages for breach of contract. The only question presented is whether there was a contract to breach. The matter is to be determined solely from the allegation of the petition of appellant, William Daugherty, Jr., since the trial court, having sustained special exceptions to this petition, dismissed appellant's suit upon his refusal to amend his pleading.

The material allegations of appellant's petition are:

"Plaintiff says that on or about the 15th day of May, 1947, and prior thereto he was in the business of buying, selling and processing grain at Bartlett, Texas, and offering the same for sale at various points in and out of Texas. He further says that he wanted to build a grain elevator in connection with his business at Bartlett, Texas, and consulted G. C. McDonald, the local agent of defendant at Bartlett, Texas, with reference to leasing ground and trackage from the defendant and along the defendant's right-of-way between Clark and Bell Streets in Bartlett, Texas. He further says that the ground and trackage was necessary in the operation of the elevator for loading grain from the elevator into cars for transportation over the defendant's railroad to points of delivery.

"3. On or about July 25, 1947, plaintiff made written application to defendant railroad company for the desired lease of ground and trackage necessary to serve the elevator which plaintiff proposed to construct. The application being in words and figures as follows:

2500–3–38                                                    Form 2367

MISSOURI–KANSAS–TEXAS LINES
Application for Lease or Track
Bartlett, Texas     July 25, 1947
Station                Date

1. Daugherty Grain Co.                    Bartlett, Texas
   (Name of Applicant)          (Station at which lease desired)
2. If incorporated, in what state?   Not Inc.
3. Name of President William Daugherty Sole Owner   Secretary
   With whom negotiations to be conducted   William Daugherty, Jr.
4. If co-partnership give names and initials, also addresses of all part-
   ners.   None
5. Headquarters—City and State   Bartlett, Texas.
6. Lease dimensions in feet ———by——— (attach sketch of property
   applied for)
7. Track at or near M.P.   North End of Stock Track capacity one car
   track will have to be lengthened   Length ———
8. Use to be made of property   Load and unload grain of various kinds
   and processing.
9. Give estimated cost of plant or other facilities to be established
   $10,000.00.
10. State average amount invested in merchandise stock to be carried.
    $40,000.00
11. State number to be employed in this location   Average of six persons.
12. If applicant is connected with other industries, give name and location
    Daugherty Grain Company, Taft, Texas.

Information requested on Item 11 must be furnished before application can
be considered.

13. APPROXIMATE AMOUNT OF ANNUAL TONNAGE–CAR-
    LOADS(*) 60 car per year
            INBOUND                              OUTBOUND

| COMMOD-ITY | TOTAL CAR-LOADS | ORIGIN | COMMOD-ITY | TOTAL CAR-LOADS | DESTI-NATION |
|---|---|---|---|---|---|
| Corn | 15 cars | Northern Point | Milo | 10 cars | various |
| Milo | 5 cars | Various | 25 Corn | 25 cars | various |
|  |  |  | Wheat & Oats | 5 cars | various |

   (*) Advise by letter other important details regarding tonnage.

14. Applicant hereby agrees to pay engineering or other expenses incurred
    by Railway Company, if, for any reason, the applicant does not have
    track constructed.
                SIGNATURE OF APPLICANT   Daugherty Grain Co
                    By: William Daugherty, Jr.

RECOMMENDED:
G. C. McDonald     Agent   July 15, 1947
From Frt. Traffic Standpoint ———————D. F. A.——————— 19——
From Operating Standpoint ———————D. Supt.——————— 19——
From Development Standpoint ————————————————— 19——

* When immediate authority is required, handle by wire or telephone con-
firming by wire to all concerned.
   **221 S.W.2d—59**

"4. Plaintiff alleges that in order to be ready to buy and ship corn from the 1947 crop and to use his elevator in connection with the sale and shipping of the same that it was necessary to begin immediate construction of the elevator and to know the disposition that defendant would make of his application for ground and trackage at once for loading and shipping purposes from said elevator. The defendant's local agent G. C. McDonald communicated with defendant's Dallas office for information with reference to plaintiff's application for the lease of ground and trackage.

"On July 31, 1947, the defendant's local agent at Bartlett, Texas, G. C. McDonald, received the following telegram:
40 41 WDCDallas July 31, 1947
G. C. McDonald Bartlett.

OK Permit Daugherty Occupy Railroad Ground Provided He Will Fully Protect Railroad From All Liability Signing Lease When Presented. Does He Want To Lease All Ground Between Clark And Bell Street On What Side Track Is Location. K-435

H. G. Till. 935PM

"Upon receipt of said telegram plaintiff immediately began construction of the elevator at the location theretofore measured and designated by Pete Harold, defendant's section foreman at Bartlett, Texas. The said H. G. Till, whose name is signed to said telegram, is an employee of the defendant and serving in the capacity of director of industrial research and development and defendant's duly authorized agent in that capacity.

"5. On or about August 16, 1947, R. G. Buford, assistant director of industrial research and development for the defendant railroad company, and its agent in the capacity, informed plaintiff by letter of said date and dated in said letter in part:

" 'Your request for lease on this space was handled through our Agent at Bartlett and it was understood that this was the property you desire and that there would be sufficient track room to serve your warehouse. We understand you have requested that additional track to be provided in order that it may serve all of the property in the proposed lease. This would involve something like 200 feet of additional track, the removing of the present turnout, and some additional signal work. You were advised that it is customary for the industry to pay for the rearrangement of tracks to serve its individual plant, and just as an offhand estimate, it would cost from $1,500.-00 to $2,000.00 to make this installation. We understood that you objected to paying this amount and it has been suggested that we write you in connection with this matter,

" 'As stated above, this is a customary charge and we see no way to avoid the industry standing the cost of this rearrangement of trackage. Further, as stated above, the exact amount of this charge is not known but if it is your intention to pay the cost of this rearrangement, we will be pleased to have an engineering party make a survey and give us a more accurate estimate of the cost of same.

" 'It should be understood in connection with this lease that any building constructed should be so located as not to materially obstruct the view of the adjacent street crossings. We are attaching two prints showing the property in the proposed lease and would thank you to indicate on one of these prints where your building will be located, returning same to this office and advising regarding construction of additional trackage.'

"On the 3rd day of September, 1947, plaintiff advised the said R. G. Buford, MKT Building, Dallas, Texas, by telegram as follows:

" 'In reference to our lease recently applied for at Bartlett, Texas, and additional trackage to be built there. Will pay as per your estimate of $1500.00 or $2000.00 as soon as presented with the necessary contracts and the assurance the track will be installed as soon as possible.' Daugherty Grain Company, William Daugherty, Jr.

"6. Plaintiff further represents that he, relying upon the contract entered into with defendant through his agent R. G. Buford, wherein defendant agreed to furnish ground and trackage for servicing the elevator and the shipping of grain therefrom, plaintiff began construction of his elevator. On or about August 1, 1947, plaintiff began dig-

ging the pit for the elevator and setting forms for the pouring of concrete and purchasing material and equipment necessary to the completion and operation of the elevator.

\* \* \* \* \* \*

"8. Plaintiff alleges that the defendant railroad company refused to carry out its contract with him and refused to furnish plaintiff track necessary to service his elevator with cars in which to load and ship grain from said elevator. That defendant and its agents knew that plaintiff was constructing his elevator at the place designated and that said elevator was completed in time to be used in the buying, selling, and shipping of the 1947 corn crop at Bartlett, Texas. On September 22, 1947, plaintiff was informed by letter from R. G. Buford, assistant director of industrial research and development for defendant, as follows:

" 'We have not as yet received executive authority to construct this track but hope to have something in the near future and will advise you.'

"Up to and including this date plaintiff had been informed and let to believe by conversation and correspondence of the agents of defendant that the ground and trackage would be furnished by defendant for servicing plaintiff's elevator for shipping grain therefrom."

Damages are fully pleaded.

Appellant contends that the facts pleaded show a contract between the parties while appellee's view is that they only show negotiations for a contract.

Only one authority is cited by appellant on the merits of his case, being Babicora Development Co., Inc., v. Edleman, Tex. Civ.App., 54 S.W.2d 552, 554 (El Paso C.C.A.Writ Dis.), and in which the court held that: "The acceptance of a proposal may be by act \* \* \*."

The "proposal", according to appellant, is embodied in the telegram of July 31st from appellee's Till to the local agent in Bartlett, and "acceptance" is found in the fact that on the day following the receipt of such telegram appellant began, with appellee's knowledge, the construction of his elevator.

"Proposal" as used in the Babicora case, supra, and as applied to the law of contracts, is the equivalent of the word "offer".

"An offer must be so definite in its terms, or require such definite terms in its acceptance, that the promises and performances to be rendered by each party are reasonably certain." 10 Tex.Jur., p. 32, quoting from Restatement of Contracts, Sec. 32.

The offer (telegram) relied upon by appellant does not, in our opinion, meet this test.

The ordinary ingredients of a lease of the nature here involved would be (1) quantity of land, (2) location of land, (3) term of lease, and (4) consideration. None of these matters is stated with any degree of certainty; in fact the last two items are not mentioned at all. As a consequence of this, we are unable to attribute to the act of acceptance by appellant the effect of creating a valid, definite and enforceable contract.

This holding disposes of the specific point made by appellant in his brief, but we desire to add that we have carefully considered all of the allegations of his petition, and, accepting them as true, we are of the opinion that they only reflect negotiations carried on by the parties for a lease which never came into existence. Liquid Dispatch Line v. Texas Power & Light Co., Tex.Civ. App., 6 S.W.2d 169 (Dallas C.C.A.Writ Ref.); Williston on Contracts, Rev.Ed., Vol. 1, Sec. 27; 17 C.J.S., Contracts, § 49, page 390.

The judgment of the trial court is affirmed.

Affirmed.