[Civ. No. 7936. Third Dist. Aug. 30, 1951.]

M. C. PARKER, Respondent, v. LEO MENELEY et al., Appellants.

Babcock & Phillips for Appellants.

Arthur DeBeau Carr and Wray F. Sagaser for Respondent.

VAN DYKE, J.—This action was brought to recover damages for breach of contract. The first count alleges: ''That on or about the 3rd day of April, 1948 defendants, Meneley and Owyang, entered into an *oral* contract with plaintiff herein wherein plaintiff was to install three water pumps at a cost of $6,251.95; that as well plaintiff was to act as agent for the defendants herein in having three wells sunk for a total amount of $3,565.61; that concomitant with the entering into of this oral agreement, defendants paid to plaintiff the sum of $2,000. That under the terms of said oral contract defendants agreed to pay the full amount of the charges upon completion of the work by plaintiff herein in the amount of $7,817.56. That after the work was started and the wells sunk and pumps installed, defendants herein breached their contract by not paying the balance of $7,817.56 all of which amount is now due, owing and unpaid.'' The second count was in form a common count for goods and services. The prayer was for the alleged unpaid balance due on completion of the contract.

Defendants answered, denying all allegations of each count. Defendants cross-complained. They alleged that on the same 3d day of April plaintiff and defendants entered into a *written* contract, a copy of which was attached; that defendants had performed all of their obligations thereunder, but that plaintiff had failed to perform, to their damage. Plaintiff answered the cross-complaint, denying the allegations thereof and as a ''further and separate defense'' plaintiff repleaded all the foregoing quoted allegations from the first count in his complaint. Plaintiff had judgment in the trial court for $2,667.54; and defendants appealed. We shall hereafter refer to the parties as appellants and respondent, respectively.

The trial court made findings, the essential parts of which follow: Following literally the allegations of the complaint which we have quoted the court found the matters so alleged to be true, with the exception that as to the alleged breach the court found that the appellants had breached their contract ''by failing to pay the balance due of $2,667.54.'' No findings were made upon the allegations of the cross-complaint. The court concluded as matter of law that respondent was entitled to judgment as above stated, saying that the amount so allowed was ''represented by the cost of digging the wells $3,467.61, less the down payment in the sum of $2,000.00 plus the sum of $580.00 which was spent by the

plaintiff and cross-defendant in preparing two concrete bases for the pumps and for removing one pump and plus the sum of $619.93 which plaintiff actually lost in returning these three pumps to the factory." Judgment was entered for the said sum of $2,667.54.

Proceeding to prove his allegations of oral contract, respondent introduced evidence which may be said broadly to have been in support thereof, including the allegations that he was to have been paid the balance of the contract price upon completion of his agreement. But as might have been anticipated a troublesome issue arose during presentation of respondent's case in chief for it was admitted that after certain preliminary negotiations which respondent claimed merely led to the making of the oral agreement, the parties executed two written instruments, the substance of which we will now state. On a form sheet entitled "Estimate on Parker Pump Co. Equipment" the following appeared:

"April 3, 1948

"We propose to furnish to Owyang and Meneley

\* \* \* \*

"3 Western Turbines specifications listed below:"

There followed detailed descriptions and specifications of the turbines. Then appears the following: "Installed price is $1,808.00 each," total "$5,424.00." Then, omitting matters not material, there appeared this language: "All Three pumps to be shipped from the factory on April 26th, and installed not later than May 1, 1948. Cash deposit of 2,000.00. Balance due on pumps plus sales tax. $3,424.00." Next and just above the space for "Customer's signature" appeared this: "The signature herein is an authorization to install such equipment as described in the above estimate. Terms 2000.00 Cash on Pumps & Wells bal. one year." Appellant Meneley signed for appellants. Above the space provided for signature by the Parker Pump Company (the name under which respondent does business) appeared the following: "Parker Pump Co. is in no way responsible for well drillers' services." Bruce Bagwill, with admitted authority to act, signed for Parker Pump Company. At the same time and as a part of the same transaction, but upon a duplicate form a document was executed concerning the wells. Thereby Parker Pump Company proposed to furnish to Owyang and Meneley three wells to be drilled to the necessary depth to produce 2,500 gallons per minute. We quote the following: "Dia. of wells

to be 14″. Drilling cost to be 3.90 ft. as far as casing goes. Drilling below casing and up to 200′ at 3.00 ft. Drilling below 200′ at 3.50 ft. 14″. Casing as needed at 3.25 per ft. Casing gage to be 3/16″. Estimated cost of wells 1400.00 to 1500.00 each.'' The rest of the document was identical with the one first discussed, including the statement over the customer's signature that the terms were ''2000.00 Cash on Pumps & Wells bal. one year.'' In the printed forms over the customer's signature the word ''Terms'' was printed, followed by a blank space. The words ''2000.00 Cash on Pumps & Wells bal. one year'' were handwritten in that space.

A comparison of the oral agreement pleaded with the written documents points up the inconsistencies between them. According to the oral agreement as alleged and found the balance of the contract price was to be paid when respondent had performed. By the plain declaration of the written documents that balance was to be paid one year after the parties entered into their agreement. If the oral agreement prevailed there was a theory upon which respondent could proceed as for breach. If the written instruments controlled appellants had not breached their agreement because the action was begun within the year and before the appellants' obligation to pay further moneys matured.

When the wells had been drilled and the three pumps had been shipped from the factory to appellants and one of them was installed upon its base at a well, respondent ceased performance, claiming a right to do so because it had become apparent that appellants could not find the money with which to pay when performance should be complete. He introduced evidence tending to show that immediately after the contract, written or oral, was made appellants sought to obtain funds sufficient to complete the payment for the pumps and wells, applying to various banks for that purpose. They failed. When the one pump had been installed and before the other two had been placed at the wells, respondent told appellants that if the money would not be wholly forthcoming upon completion he would stop at that point. Within a few days he did stop, removed the pump that had been installed and shipped all three pumps back to the factory which received the same at a turn-back price $619.93 less than respondent had paid the factory. Apparently, although this is not expressly stated, respondent ceased performance under a claim of anticipatory breach.

Mr. Bagwill, an accredited representative of respondent,

conducted most of the negotiations leading up to the contract, whether it be oral or written. Early in his direct examination respondent caused to be introduced in evidence for all purposes Plaintiff's Exhibit No. 1, the form sheet containing the provisions relative to the pumps from which we have quoted. Thereafter appellants objected to the introduction of testimony concerning the negotiations preceding the contract upon the ground that the same contradicted the written instrument. The objections were overruled. ▮ During the cross-examination of Mr. Bagwill there was introduced in evidence as Defendants' Exhibit A the second document, and it may be said that there is no dispute but that both documents were executed at the same time and as a part of the same transaction and each refers to both wells and pumps. They are, therefore, to be treated as one contract. Respondent's evidence continued to be received over objection and continued to conflict with the writing. When it came time for appellants to present their case their testimony was as follows: They needed water to irrigate 360 acres of land they intended to plant to rice; they had been unable to get an assured supply of irrigation water from a public utility which ordinarily furnished water in that locality because of prior commitments of the utility; they therefore needed three wells and three turbine pumps which they proposed to operate by Diesel generators; they approached respondent and informed Bagwill of their needs, and told him they could pay $2,000 down and would need a year to pay the balance; thereafter the written instruments were signed and respondent ordered pumps and placed drillers upon the land; after this had been done they paid the $2,000 called for by the written instruments which respondent accepted. Respecting their negotiations with lending agencies after the writings had been executed, their testimony was generally to the effect that these things were done, not because they were in any way obligated to further finance their agreement with respondent, but for the accommodation of respondent in order that notwithstanding the contract he might obtain the balance through their having borrowed the needed sum from others. Their position was, and their testimony bore out that position, that in truth and in fact there was no obligation upon them after the payment of the $2,000 to do anything further save to complete paying for the pumps and the wells on or before April 3, 1949, one year after the date of the written contract.

The trial court rendered a memorandum opinion in which it held that the contract had been oral and directed findings to be prepared by counsel for the respondent. This was done and these findings were made as we have stated them. When these findings were proposed counsel for the appellants objected thereto, and among other grounds of objection urged that there was no finding relative to the place in the picture of the written contract. These objections were unavailing and the court signed the findings proposed.

Appellants contend that the findings of fact are not supported by the evidence, that the conclusion they breached their contract is unsupported, that on the contrary they proved a written contract as alleged in their cross-complaint and proved the breach thereof and damages flowing therefrom and that the judgment should have been that plaintiff take nothing and that they recover of plaintiff their damages for his breach.

We must first determine whether the writing contains the necessary requisites for a contract. The parties to the instrument are clearly set forth, as is the subject matter. The instruments contain a clear offer and an acceptance thereof. Each states in the body of the writing that ''We propose to furnish to.'' ■ ''The word 'proposal', as applied to the law of contracts, is the equivalent of the word 'offer.' '' (Words & Phrases, vol. 34, 1951 Cum. Pocket Part, p. 153, citing *Daugherty* v. *Missouri-Kansas-Texas R. Co. of Tex.*, (Tex.Civ.App.) 221 S.W.2d 928, 931; Black's Law Dict.) ■ The acceptance of the offer is contained in these words above the signature of appellant Meneley: ''The signature herein is an authorization to install such equipment as described in the above estimate.'' ■ We are not unmindful of the fact that the heading or caption of the writings states that the writing is an estimate. The use of the word ''estimate'' under certain circumstances might indicate the remainder of the document was not intended to constitute an offer capable of acceptance, but this word cannot control the contractual requisites of the writing for at least two reasons: 1. The word as it first appears on the documents is not part of the operative clauses; 2. The printed portion in the lower right-hand corner proclaims that the signature of the offeree is an authorization to the offeror to install the equipment *as set forth in the estimate*. This clearly demonstrates that the parties were not merely stating an approximation of something to be done in

the future. We conclude that the writing contained every requisite of an enforceable contract between the parties.

The next step is to determine whether the trial court erred in permitting plaintiff to prove a different contract by parol. We are not at this moment concerned with the admissibility of parol evidence to show that the written contract never had any existence because the parties never intended it to constitute a contract. We will treat that subject later. ■ But certainly, from the uncontradicted testimony of respondent and his agent and of the appellants, the written instrument and the oral agreement, if there was one, eventuated from the same previous negotiations and covered the same subject matter. And if these contracting parties, after these preliminary negotiations concerning the subject matter involved, came to an understanding and then adopted and executed these written instruments as the final and complete expression thereof, the result was an integrated agreement to which the parol evidence rule concerning such documents would apply.

■ Further, if after such negotiations concerning a definite subject matter of contract a written instrument is executed covering that subject matter and purporting to state the contractual obligations and rights of the parties, which instrument is upon its face complete, clear and adequate, it is to be presumed that it was executed by the parties with the intention to adopt it as the final and complete expression of their agreement.

The parol evidence rule, and the exceptions thereto, are contained in section 1856 of the Code of Civil Procedure. That section provides:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases:

"1. Where a mistake or imperfection of the writing is put in issue by the pleadings;

"2. Where the validity of the agreement is the fact in dispute.

"But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in section eighteen hundred and sixty, or to explain an extrinsic ambiguity, or to establish illegality

or fraud. The term agreement includes deeds and wills, as well as contracts between parties.''

Sections 1625 of the Civil Code and 1860 of the Code of Civil Procedure are also to be considered. Section 1625 of the Civil Code provides:

''The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.''

Section 1860 of the Code of Civil Procedure provides:

''For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret.''

It is obvious that this case does not come within the two exceptions stated in section 1856, for no mistake or imperfection of the writing is put in issue by the pleadings. Appellants take the position that the only contract they had with respondent concerning the matter of pumps and wells was the written instrument which the parties executed. The respondent made no claim in his pleading that if that contract was the contract between the parties there was any mistake or imperfection in the writing. Nor was the validity of the written agreement a fact in dispute save as such issue may be included in the claim that the same never had existence as a contract. It was claimed by respondent during the trial that the writing was ambiguous and for that reason parol evidence was admissible to explain its terms, but we fail to find any ambiguity in the writing. The terms are concise, but full, and they are susceptible of only one interpretation. ■ In particular, the financial terms are perfectly clear. The statement ''Terms 2000.00 cash on Pumps & Wells bal. one year'' means exactly what it says and evidence was not admissible to show, as claimed by the respondent, that this statement meant anything else than what it so plainly says. Particularly was parol evidence inadmissible to show, as was attempted, that by that statement in the contract the parties intended not to state any term of the contract but merely to give information to a bank or other lending institution that if such lender ''financed the deal'' between appellants and respondent it would be required to do so in such a way as to extend to appellants one year's time within which to pay the balance. Such an interpretation would be utterly inconsistent with

the plain language of the instrument. ■ It was further claimed by respondent that the provision that the Parker Pump Company was in no way responsible "for Well Drillers' services" furnished ground for permitting the introduction of evidence concerning the time of payment clause which we have discussed. Relative to this provision respondent pleaded that he was merely to act as agent to obtain the drilling of the wells for appellants. But the provision says nothing of agency and the ·other parts of the written instrument are completely at war with such a claim. To illustrate, we need do no more than refer again to the handwritten statement of terms which applied both to wells and to pumps and stated that the balance to be paid therefor—and of course to be paid to respondent—was to be paid within one year. There was no occasion for the introduction of parol testimony under any claim of ambiguity or conflict of terms within the writing itself. (See *Harvey etc. Co.* v. *Western etc. Union,* 76 Cal.App.2d 421, 426 [173 P.2d 330].) ■ The admission of parol evidence in this case cannot be sustained under the provisions of section 1860 of the Code of Civil Procedure. This section must be harmonized with section 1625 of the Civil Code and section 1856 of the Code of Civil Procedure. (*Peterson* v. *Chaix,* 5 Cal.App. 525, 531 [90 P. 948].) ■ Section 1860 has no application where the instrument is clear and unambiguous. (*Barnhart Aircraft, Inc.* v. *Preston,* 212 Cal. 19, 22 [297 P. 20] ; *Barham* v. *Barham,* 33 Cal.2d 416, 422 [202 P.2d 289] ; *Pagel* v. *Shipp,* 68 Cal.App.2d 12, 20 [155 P.2d 878].) We conclude upon this subject that the agreement as written .bound the respondent to drill the wells and to furnish and install the pumps, and that the obligation of the appellants was to make the down payment of $2,000 and to pay the balance of the agreed price within one year from the date of the instrument.

The judgment cannot be sustained upon the theory that parol evidence was admissible to show that the purported writing was not in fact the contract between the parties. ■ Under this rule parol evidence is admissible to show that the writing was sham or artifice, or that its existence as a contract was dependent upon some condition not inconsistent with the terms thereof. (*P. A. Smith Co.* v. *Muller,* 201 Cal. 219 [256 P. 411] ; *Severance* v. *Knight-Counihan Co.,* 29 Cal.2d 561 [177 P.2d 4, 172 A.L.R. 1107] ; 32 C.J.S. 857.) Such evidence is not considered as varying the terms of a written instrument, but as negating its very existence. ■ The

parol evidence offered here simply contradicted the terms of the written instrument. It did not tend to show in any way that the parties executed the contract for some extrinsic purpose, such as sham or artifice, or that it was intended for some purpose other than to set forth their respective rights and obligations. Neither does the evidence show any extrinsic conditions upon which the effectiveness of the writing depended. In fact, the theory of respondent appears to be directly contrary to this rule. The conclusion from all his contentions is that the writing is not the contract because the parties entered into an oral contract.

 Parol evidence is also admissible to show a collateral oral agreement as to matters on which the agreement is silent if the collateral agreement does not vary the terms of the written instrument. (*Kunz* v. *Anglo & London Paris Nat. Bank,* 214 Cal. 341 [5 P.2d 417]; *O'Melia* v. *Adkins,* 73 Cal.App.2d 143 [166 P.2d 298].) The oral agreement, as found by the court, plainly contradicted the written agreement, and the testimony relative thereto was not admissible as proving any collateral undertaking.

We conclude that the findings of the trial court that an oral agreement was entered into between the parties as alleged in the complaint is unsupported by the evidence; that the only finding upon this issue which the court could make, which finding was required by the record here, was a finding that the oral contract pleaded was never made between the parties; that the written contract was duly executed and measured the respective obligations of the parties thereto; and that there was no breach of that contract. Upon the record, therefore, the court should have proceeded to find that the written contract pleaded by the cross-complaint was the contract between the parties and that respondent breached the same when he refused to perform.

The judgment is reversed.

Adams, P. J., and Peek, J., concurred.