[Civ. No. 16294. First Dist., Div. Two. June 21, 1955.]

SAMUEL BRIGHT et al., Appellants, v. K. GINESTE et al., Respondents.

Louis Ferrari for Appellants.

Norman S. Menifee for Respondents.

KAUFMAN, J.—This is an appeal from a judgment in favor of defendants in an action by plaintiff for the alleged conversion of personal property. Defendants also filed a cross-complaint but having presented no evidence in support thereof, judgment was entered against them on the cross-complaint.

The complaint herein is for conversion of personal property of the alleged value of $80,000. It was alleged that appellants were lessees and respondents lessors of certain real property in the city of San Carlos, California, and that appellants and certain other parties executed a chattel mortgage on the aforesaid personal property for the purpose of securing rentals under the lease, that said lease was cancelled by respondent Gineste with the consent and approval of respondent Walter on August 22, 1950, and that said cancellation released appellants from all liabilities under said lease. It was further alleged that on September 27, 1950, appellants demanded that defendants as mortgagees deliver a certificate that the mort-

gage of chattels had been discharged by the cancellation of the lease, or enter such satisfaction of record, which requests defendants decline and still decline to fulfill. Respondents in their answer alleged that prior to the execution of the cancellation of the lease, appellant vacated and abandoned all of the personal property referred to and described in the complaint. For another and separate defense it was alleged that in consideration of the release of claims for further rentals, claims for taxes and other obligations, appellants agreed to relinquish any claim to any personal property located on the leased premises, and particularly all of the personal property described in Exhibit A attached to appellants' complaint.

Defendants and respondents Gineste and Walter, had been for many years engaged in the cleaning and dyeing business as a corporation, the San Carlos Cleaning and DyeingWorks, Inc. The corporation owned real property in San Carlos, five retail stores, rolling equipment, and all the fixtures and personal property used in the operation of the business, as well as the good will that had been built up through the years. On October 17, 1947, this business, the retail stores and all fixtures, personal property and equipment, together with the good will of said business, were sold to M. D. Rutledge for $100,000. A lease of the real property was agreed upon, and before the completion of the transaction, appellant Samuel Bright purchased a one-half interest in the business, personal property, name and good will purchased by Rutledge from the corporation.

On or about August 21, 1949, a new lease for a 10-year term providing for a total rent of $70,000 was entered into between respondents as lessors and Rutledge as lessee. Subsequently, on or about February 4, 1950, this lease was transferred from Rutledge to appellant Bright upon his purchase of Rutledge's interest in the business, personal property, fixtures, equipment and assets of the business. Appellant testified that he paid $20,000 in cash and assumed an indebtedness of more than $50,000 to complete this transaction.

In June, 1950, appellants negotiated with certain parties who were to acquire a half interest in the business, and together with them appellants executed a chattel mortgage on the personal property, fixtures and equipment of the San Carlos Cleaners to secure the rentals to become due under the lease. Appellant Bright's negotiations for a sale of a half-

interest in the business fell through, and he continued to operate as sole proprietor.

Appellant Bright and Rutledge had both operated the business at a loss, and in mid-August, 1950, appellant became so financially involved that further operation appeared impossible. He was on a cash basis with his employees and was unable to meet other indebtedness. Rent under the lease was paid up until August 20, 1950, but there were personal property taxes in the sum of more than $600 which were unpaid and to which a 10 per cent penalty would be attached on September 1, 1950.

There was testimony that in August, 1950, the business consisted only of the main plant, equipment was run down, and the retail stores had all been closed.

On the morning of August 22, 1950, appellant Bright told his foreman, Mr. Lerman, that he was "through," and told Lerman to telephone respondent Gineste and to so advise him. Bright delivered the keys of the plant to Lerman, took his personal belongings and left the premises. Appellant Bright's testimony was in conflict with this version of the events on the morning of August 22, 1950. He testified that Mr. Gineste and Mr. Lerman came into his office and that Mr. Gineste produced a paper and demanded that he sign it, saying that it would release him from the lease. He said that he asked who had drawn it up, was advised that an attorney had drafted it, that he signed it, and that there was no further conversation. He stated that his intent in signing the release was solely to cancel the lease and that he did not intend to surrender or abandon the personal property.

Mr. Lerman stated that on that morning Bright went into his office, put some papers in his brief case, then called him in and asked him to call Mr. Gineste and tell him to take the place over, as he was giving it up. He gave him the key to deliver to Gineste, and left the premises immediately. Respondent Gineste arrived about an hour later, and Lerman told him what had occurred. Some time later in the day the document referred to as the "cancellation of the lease" was prepared and was signed, according to Lerman and Gineste, in the afternoon of August 22 at the home of Mr. Bright's daughter in Redwood City, with Bright, Lerman and Gineste present.

Mr. Lerman testified that when they met at the home of appellants' daughter Gineste asked appellant why he was giving up the plant and he replied that things were going

too far in the hole, he could see no way out, and would just as soon not owe any more money on the lease, that he would sign the paper if Gineste would release him from the balance on the lease, and he would in turn give Gineste the equipment and the mortgage. Lerman said he did not see appellant again until he asked him to testify in his behalf, but that he asked him how he could sue for the equipment when he had given it away in Lerman's presence.

Appellant Bright testified that he made an oral demand for the personal property about one week after August 22, 1950, but this was denied by Gineste. A written demand therefor was made on September 27, 1950.

The property and equipment was sold to a partnership of which respondent Gineste was a member, for $12,000, but was encumbered to the extent of $7,000 which was paid off by Gineste. He stated that the property and equipment installed were worth $12,000 but if removed would be worth only $5,000.

The trial court found that appellant Samuel Bright surrendered the premises to defendants and vacated and abandoned them and relinquished and abandoned the personal property therein on the morning of August 22, 1950; that the reasonable value of the abandoned property was $12,000 and that it was encumbered to the extent of $6,000. It was further found that appellant Bright through his attorneys on September 27, 1950, made a demand on respondents for release of the chattel mortgage and delivery of the personal property which had previously been abandoned by appellant; that appellant at the time of the surrender of the property was under obligation to pay rentals under the lease for a period of approximately nine years, and that he was otherwise in financial difficulties; that a cancellation of the lease was executed by appellant Bright and respondent Gineste in the afternoon of August 22, 1950, after the actual abandonment and surrender previously mentioned.

The essence of appellants' argument on this appeal is that there is no evidence to support the trial court's finding that an abandonment and surrender of the personal property occurred on the morning of August 22, 1950, and that only one transaction is here involved, that of the execution of the release which contains no reference to the personal property. The trial court found that there were two transactions on August 22, the abandonment and surrender of the property by appellant Bright in the morning and the afternoon

meeting of the parties at which respondent Gineste presented the written release which he had prepared following the surrender, to appellant Bright for his signature. This finding finds support in the testimony of the witness Lerman.

Appellants' evidence at the trial was that Gineste walked into his office at the plant in the morning and asked him to sign the release. The testimony of the other witnesses, however, which the trial court accepted as true, was that Bright walked out of the plant early in the morning, gave the keys to his foreman for delivery to Gineste, said he was through, collected his personal papers and left. The afternoon meeting was arranged by respondent to secure the written release. Respondents note that although they testified that the afternoon meeting was held at the home of Mr. Bright's daughter in Redwood City, Bright did not call her as a witness to deny that such meeting took place, although he now contends that the transaction was completed in the morning at the plant in San Carlos. There is clearly evidentiary support for the finding that there were two distinct transactions on August 22, 1950. Also well supported in the evidence are the findings that the value of the property surrendered was $12,000 subject to encumbrances in the sum of $6,000; that appellant Bright was in financial difficulties, and that he was at the time of the surrender, still under obligation to pay rentals under the lease for a period of approximately nine years. Appellants' statement that they were deprived by this judgment of property worth nearly $100,000 is simply an argument that the trial judge should have believed their testimony instead of respondents'. That conflict has been resolved against them, and this court is bound by the finding of the value of the property which is supported by substantial evidence.

Appellants argue that the written cancellation of the lease terminated the mortgage, for when a mortgagee releases the grantee, that also discharges the mortgagor's liability. (Glenn on Mortgages, vol. II, p. 1203, § 280.) *Singleton* v. *Hartford Fire Ins. Co.*, 127 Cal.App. 635, 642 [16 P.2d 293], is cited, wherein it is held that a mortgagee cannot foreclose upon the property independently of enforcing payment of the promissory note, and when the promissory note is cancelled or surrendered, no right of foreclosure remains. Appellants argue that this rule is applicable to the instant case. However, if the finding is supported that there was a surrender of the personal property on the morning of August 22, 1950,

then the respondent mortgagees acquired the estate of the mortgagors, the mortgage interest was merged in the fee, the mortgage extinguished, and title vested in respondents. (*Anglo-California Bank* v. *Fields,* 146 Cal. 644 [80 P. 1080] ; *Jensen* v. *Burton,* 117 Cal.App. 66 [3 P.2d 324].) ▮ The trial court here did find that there was relinquishment and surrender of the personal property on the morning of August 22, 1950.

Apparently the findings use the term "abandonment" not in the technical legal sense but as synonymous with relinquishment or surrender. ▮ For to constitute an abandonment in the strict legal sense there must be a parting with title that is unilateral, the owner must leave the property free to the acquisition of whoever wishes to claim it, and indifferent as to what may become of it. (1 Cal.Jur.2d, p. 3, § 3.) ▮ A transfer of property from one person to another cannot be effected by abandonment, and abandonment cannot be made to a particular individual. ▮ A relinquishment by one person to another is not an abandonment. (See 1 Cal.Jur.2d, p. 5, § 4 and cases there cited.) In the opinion of the trial court there is a reference to the abandonment of the premises even though the trial court refers to the evidence by which this was accomplished as the direction of the foreman by appellant Bright to deliver the keys to respondent and advise him that he was through. Again, in that opinion the trial court speaks of the "surrender of the personal property that was secured by the chattel mortgage." ▮ The finding that there was a "surrender" of the personal property herein is sufficient to support the judgment rendered. That surrender was accomplished by appellant Bright through his foreman by instructing him to call respondent Gineste "to come in and take the place over, as he was giving it up." This language and the delivery of the keys to the foreman for transfer to the respondent was subject to the construction that a delivery of the entire dry cleaning plant then in operation, was intended to be made to Gineste. That Gineste accepted such delivery from the agent is evidenced by his conduct in calling his attorney and having a written cancellation of the lease prepared on the same day.

It is urged that oral conversations before and at the time of the execution of the cancellation of the lease were ineffectual to change the terms of the written cancellation of lease. Appellants cite section 1625, Civil Code, which provides that the execution of a contract in writing supersedes all nego-

tiations concerning its matter which preceded or accompanied the execution of the instrument. But, as respondents point out, the instrument of cancellation makes no reference whatever to the personal property which the trial judge found had been previously surrendered on the morning of August 22. Parol evidence is admissible to show a collateral agreement if it does not vary the terms of the written agreement. (*Parker* v. *Meneley*, 106 Cal.App.2d 391, 402 [235 P.2d 101]; *O'Melia* v. *Adkins*, 73 Cal.App.2d 143 [166 P.2d 298].)

■ Here the transaction involving the surrender of the personal property had occurred and was complete some hours prior to the execution of the written document. Also it was proper to show that the consideration for the cancellation of the lease was the surrender of the mortgaged property to respondents.

Appellants maintain that the leaving of personal property in leased premises after termination of the lease does not constitute abandonment of such property. A tenant in this state is given the right by statute to remove fixtures. (Civ. Code, § 1019.) ■ Even where a tenant is dispossessed he has the right to remove fixtures. (McAdam on Landlord and Tenant, 5th ed., p. 722, par. 168.) Furthermore, appellants say that the lease by its terms provided that upon termination, the lessee might remove his personal property. Of course, in the present case, the lease still had nine years to run before it would terminate, and appellants had not faithfully performed all the conditions and covenants on their part that were to have been faithfully performed. Respondents call attention to paragraph 3 of the lease which provides that "if the lessee abandons, vacates or surrenders the premises during the term, personal property left on the premises shall be deemed abandoned at the lessor's option except such property as may be mortgaged to the lessor." Since the property herein was mortgaged to the lessors, that paragraph of the lease does not aid the respondents' contention that they would have acquired title to this property in any event by the terms of the lease.

However, the arguments in the briefs concerning the law as to fixtures and the general rules pertaining to personal property of tenants appear to be irrelevant in view of the fact that the personal property herein which was mortgaged by appellants to respondents was found to have been surrendered and given to respondents prior to the cancellation of the lease.

Respondents gave ample consideration to appellants for the surrender and gift of said mortgaged property when they cancelled the lease and released appellants from all obligation thereunder.

The record before us discloses ample evidence to support the findings and judgment of the trial court. No prejudicial error appearing in the record the judgment must be affirmed.

Judgment affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied July 21, 1955, and appellants' petition for a hearing by the Supreme Court was denied August 17, 1955.