[Civ. No. 23767. Second Dist., Div. Three. Feb. 19, 1960.]

ESTHER YARUS, Respondent, v. NORMAN IRVING YARUS, Appellant.

Robert Haves for Appellant.

Shacknove & Goldman and Ben F. Goldman, Jr., for Respondent.

FORD, J.—This is an appeal by the defendant from a judgment in an action for declaratory relief. By her action the plaintiff and respondent sought to have the provisions of an interlocutory judgment of divorce construed by the court.

That interlocutory judgment was entered on May 21, 1956, in an action brought by respondent against appellant. The need for a declaratory judgment with respect thereto arose out of the fact that appellant filed a petition in bankruptcy in the United States District Court, Southern District of California, Central Division, on or about January 25, 1957, wherein he listed as one of the debts dischargeable in bankruptcy certain payments provided for in the interlocutory judgment of divorce.

In the declaratory relief action, the court made the following findings of fact: 1. That the interlocutory judgment of divorce was entered on or about May 21, 1958,[1] in Book 3097, at page 151, of Judgments in the records of the superior court. 2. That that judgment provided in part as follows:

"2. That the real and personal property which is or is claimed to be the community property of the parties be and it is hereby awarded to the parties as follows,[2] to the end that same shall be from and after the date of entry of this interlocutory judgment the sole and separate property of the party to whom same is awarded: . . .

"(d) Solely by way of property settlement, and not as payment of alimony or support and maintenance, defendant is ordered to pay directly to plaintiff the total sum of $16,200.00, payable as follows:

"(i) $250.00 per month for 24 months, on the 10th day of each and every month, commencing with one such payment on June 10, 1956.

"(ii) $225.00 per month for 24 months, on the 10th day of each and every month, commencing with one such payment on June 10, 1958.

"(iii) $200.00 per month for 24 months, on the 10th day of each and every month, commencing with one such payment on June 10, 1960."

---

[1] It is clear that, through inadvertence, the year was stated to be "1958" and that it should be "1956."

[2] The property awarded to the defendant husband by the interlocutory judgment was as follows:

1. 1956 Chevrolet automobile;

2. All personal property, not specifically described in the judgment, which was in his possession, custody or control;

3. "All other personal property of every kind and character, which is or is claimed to be community property (including, but without limitation, the businesses conducted by defendant under the names of Scientific Pet Food Co., Scientific Dog Feeding Co. and King Pet Products Co.)"

The plaintiff wife was awarded residential real property, an automobile and other personal property.

3. That the interlocutory judgment further provided in part:

"(h) As an express condition of the foregoing awards of the claimed community property of the parties, it is ordered that, upon the death or remarriage of plaintiff, any and all payments required to be made by defendant pursuant to subparagraph (d) hereof shall cease and terminate, and defendant shall have no further liability or obligation thereon; except that such death or remarriage shall not terminate or effect [sic] defendant's obligation as to any such payments which shall have become due and shall be unpaid at the date of such death or remarriage."

4. That it was intended by the parties that the payments provided for in paragraph 2(d) of the interlocutory judgment of divorce were to be in the nature of alimony and support and maintenance of the plaintiff. 5. That "[d]espite the label placed thereon," it was not intended by the parties that the payments provided for in paragraph 2(d) of the interlocutory judgment should be a settlement of property rights. 6. That on or about January 25, 1957, defendant filed a petition in bankruptcy and listed therein as one of the debts dischargeable in bankruptcy the payments provided for in the interlocutory judgment. 7. That on April 17, 1958, defendant received his discharge in the bankruptcy proceedings, which discharge provided in part that " 'defendant is discharged from all debts and claims which, by act of Congress relating to Bankruptcy, are made proveable against his estate, except such debts as are, by said act, excepted from the operation of a discharge in Bankruptcy.' " 8. That plaintiff made no appearance in said bankruptcy proceedings. 9. That the payments provided for in section 2(d) of the interlocutory judgment "were not discharged in bankruptcy by the defendant." 10. That an actual controversy has been in existence between the parties as to the interpretation and construction of the interlocutory judgment of divorce.

The conclusions of law were to the effect that the payments for which provision was made in the interlocutory judgment, being for alimony and support and not in settlement of property rights, were not dischargeable in a "court of bankruptcy" and the plaintiff could enforce her rights with respect to such payments as against the defendant. Judgment was entered accordingly.

A transcript of the proceedings in the divorce action on May 3, 1956, when the matter came on for trial, was received in evidence. The record shows that, at that time, counsel for

the defendant stated to the court that he thought that a settlement had been reached. After testimony by the plaintiff and a witness on her behalf with respect to the issue of marital cruelty, but without any evidence being offered with respect to the issues of alimony and support and the disposition of property, the court stated: ''Let the record show that prior to the trial of this case, I had a conference with counsel and the parties in chambers and pursuant to the stipulation and the meeting of these parties during the noon hour, they used extremely good judgment in arriving at a conclusion in this matter. . . . An interlocutory decree of divorce is granted to the plaintiff.'' The court then stated the provisions which were embodied thereafter in the interlocutory judgment. The order with respect to the payment of the sum of $16,200 was said by the court to be ''by way of division of the community estate.'' Both counsel joined in a waiver of written findings of fact. Counsel for the plaintiff prepared the form of judgment and submitted it to counsel for defendant with a letter of May 15, 1956, in which plaintiff's counsel stated in part: ''I enclose herewith an original and two copies of an Interlocutory Judgment of Divorce in the above-entitled matter prepared in accordance with our agreement and the informal order of court at the close of the trial in the above-entitled matter. I have approved same as to content and form.''

In the declaratory relief action, the determination of the trial court was made after extrinsic evidence, offered to prove that the payments were by way of alimony and support, had been received. Such evidence was admitted by the trial court over objections of the defendant based upon the parol evidence rule. The defendant founded his position upon the fact that the interlocutory judgment stated that the sum of $16,200 was to be paid to plaintiff ''[s]olely by way of property settlement, and not as payment of alimony or support and maintenance.''

A discharge does not release the bankrupt from a debt for alimony, support or maintenance which is or may become due. (*Blair* v. *Blair*, 44 Cal.App.2d 140, 145 [112 P.2d 39]; *Remondino* v. *Remondino*, 41 Cal.App.2d 208, 214-215 [106 P.2d 437]; *Goggans* v. *Osborn*, 237 F.2d 186, 189.) But the husband is released thereby if the liability is not of that nature but is a debt incurred in effecting a property settlement. (*Fernandes* v. *Pitta*, 47 Cal.App.2d 248, 252 [117 P.2d 728]; *Tropp* v. *Tropp*, 129 Cal.App. 62, 65 [18 P.2d 385]). In determining whether a particular provision is one relating to

a debt which is so released, the court must examine its nature carefully and ascertain whether it is one which merely provides for the division of property between the parties, or whether it is one which embodies within its terms the legal obligation of support owed by a husband to his wife and is, therefore, a provision for maintenance and support.

In *Fitzgerald* v. *Herzer,* 78 Cal.App.2d 127, at page 130 [177 P.2d 364], the court stated: "Whether a judgment is cancelled by a discharge in bankruptcy depends on the nature and character of the liability for which it was recovered. Therefore, in ascertaining whether the judgment upon which the instant action is based was discharged the court will go behind the judgment, examine the entire record, and determine therefrom the nature of the original liability, and when necessary extrinsic evidence will be received for the purpose of determining the character of the debt." (See also *Wilson* v. *Walters,* 19 Cal.2d 111, 119 [119 P.2d 340].) Thus, in *United States Credit Bureau* v. *Manning,* 147 Cal.App.2d 558 [305 P.2d 970], an action to renew a judgment on a promissory note, it was held that extrinsic evidence was proper to show that the original obligation was of a nature not released by a discharge in bankruptcy. In that case the record did not disclose the nondischargeable character of the original obligation. Extrinsic evidence was there received not for the purpose of attacking the judgment but rather to make clear that concerning which the judgment was silent. The plaintiff, in that case, was insisting upon his right to recover upon the judgment in the manner and form in which it was rendered.

The problem in the case presently before the court is not whether extrinsic evidence may be received to show matters as to which the judgment is silent. Rather it is whether extrinsic evidence may be received to show that the nature of the particular provision of the judgment is not what it is expressly stated to be, namely, "[s]olely by way of property settlement, and not as payment of alimony or support and maintenance," but that it is of another character, that is, by way of alimony or support and maintenance. (See *Rilovich* v. *Raymond,* 20 Cal.App.2d 630, 639 [67 P.2d 1062]; *Parker* v. *Meneley,* 106 Cal.App.2d 391, 402 [235 P.2d 101].)[3]

---

[3]*Cf. In re Greene,* 87 F.2d 951 [109 A.L.R. 1188], where in determining whether a judgment was released by a discharge in bankruptcy, the court said (87 F.2d, at pages 952-953): "The verdict of the jury and the judgment . . . are to the effect that the acts of appellant were done by him *willfully* and *wantonly.* Therefore, this court must accept that verdict and judgment as true for the purpose of determining the question here presented."

The same rules of interpretation apply in ascertaining the meaning of a judgment as in ascertaining the meaning of any other writing. (*Verdier* v. *Verdier*, 121 Cal.App.2d 190, 193 [263 P.2d 57]; *Los Angeles Local Joint Executive Board* v. *Stan's Drive-Ins, Inc.*, 136 Cal.App.2d 89, 94 [288 P.2d 286].) It has been stated that: ''The rule is well settled that a consent judgment, being regarded as a contract between the parties, must be construed as any other contract.'' (*In re Ferrigno*, 22 Cal.App.2d 472, 474 [71 P.2d 329]; see also *Becker* v. *Becker*, 36 Cal.2d 324, 326 [223 P.2d 479].) Thus, parol evidence is not admissible to change the legal effect of a judgment or the record of it in any material respect. (*Kirkpatrick* v. *Harvey*, 51 Cal.App.2d 170, 173 [124 P.2d 367]; *Citizens Nat. T. & S. Bank* v. *Hawkins*, 87 Cal.App.2d 535, 543 [197 P.2d 385].) As clearly stated in *Estate of Gaines*, 15 Cal.2d 255, at page 264 [100 P.2d 1055] : ''The parol evidence rule, as is now universally recognized, is not a rule of evidence but is one of substantive law. It does not exclude evidence for any of the reasons ordinarily requiring exclusion, based on the probative value of such evidence or the policy of its admission. The rule as applied to contracts is simply that as a matter of substantive law, a certain act, the act of embodying the complete terms of an agreement in a writing (the 'integration'), *becomes the contract of the parties.* The point then is, not how the agreement is to be proved, because as a matter of law the writing is the agreement. Extrinsic evidence is excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself. The rule comes into operation when there is a single and final memorial of the understanding of the parties. When that takes place, prior and contemporaneous negotiations, oral or written, are excluded; or, as it is sometimes said, the written memorial supersedes these prior or contemporaneous negotiations. (See Civ. Code, § 1625; Code Civ. Proc., § 1856; *Harding* v. *Robinson*, 175 Cal. 534 [166 P. 808]; *Rottman* v. *Hevener*, 54 Cal. App. 474 [202 P. 329]; *Estes* v. *Delpech*, 73 Cal.App. 643 [238 P. 1085]; *Hanrahan-Wilcox Corp.* v. *Jenison Machinery Co.*, 23 Cal.App.2d 642 [73 P.2d 1241]; 5 Wigmore, Evidence, § 2400, p. 236; 3 Williston, Contracts, § 631; Rest., Contracts, §§ 237-244).'' (See also *Pinsky* v. *Sloat*, 130 Cal.App.2d 579, 589 [279 P.2d 584].)

The basic problem in this case is the applicability of the parol evidence rule. Authorities which are helpful in reaching

the proper solution are not lacking. In *Wilson* v. *Wilson*, 45 Cal. 399, the plaintiff had been awarded about eleven thousand dollars ''of the common property'' in the decree of divorce. She later sought an order requiring the defendant to make payments for the support of the child of the marriage. The defendant attempted to show that before and at the time the decree was entered, the parties had agreed that the money paid by the defendant to the plaintiff was ample for the support of plaintiff and the child and that the defendant was to have no further obligation for the support of the child as long as the mother had custody. The court, while holding that in any event an agreement of the parties could not divest the court of power to make an order for child support, stated at page 405: ''The offer was to show a prior or contemporaneous parol agreement between the parties, the effect of which would have been to materially vary the terms of the decree and change the rights of the parties thereunder. We know of no rule of law by which this can be done. (1 Greenl. Ev., § 275.)''

In *Marley* v. *Marley*, 356 Mo. 870 [204 S.W.2d 261], the plaintiff brought an action to recover from her former husband moneys spent by her for the support, maintenance and education of their minor son. The defense of the defendant was that, prior to the divorce action, the parties had agreed that the defendant would pay to the wife $75 a month which would be for the support of the child and and that the wife would receive nothing for her support. However, in the divorce decree no provision was made for the support, maintenance and education of the child and plaintiff was awarded $75 per month which was designated as being alimony. The Supreme Court of Missouri held that such defense was without sound basis, stating (204 S.W.2d, at pp. 263-264): ''All the evidence as to the alleged agreement, and such evidence did not go in without objection, was a collateral attack upon the validity of the divorce as to alimony. Such evidence was to the effect that the term alimony in the divorce decree did not mean alimony, but meant support and maintenance of the son. The term alimony, in a divorce decree, has a definite meaning in law, and means an allowance made by the court for the support of the divorced wife herself; and the term maintenance in a divorce decree has reference to the support of the minor child or minor children of the marriage, even though the payments are made to the divorced wife. *Hagemann* v. *Pinska et al.*, 225 Mo.App. 521, 37 S.W.2d 463, loc. cit. 466. On the face of the judgment only

alimony was awarded; extrinsic parol evidence under the pleadings was not admissible to modify, explain, or contradict the judgment. *Dickey* v. *Dickey, supra,* Mo.App. 132 S.W.2d 1026; *State* ex rel. *Gregory* v. *Henderson,* 230 Mo. App. 1, 88 S.W.2d 893, loc. cit. 905, 906, and cases there cited.''

A similar statement of the applicable law was made by the Supreme Court of Michigan in *Belting* v. *Marschner,* 245 Mich. 111 [222 N.W. 137, 138]: ''Where a decree is complete and unambiguous in itself, extraneous matters cannot be resorted to for the purpose of giving it a meaning which its language, without such help, would not carry. 21 C.J. 690. This decree is complete and unambiguous. It plainly declares the award to be in lieu of dower and in satisfaction of property claims. It is not a decree for alimony.''

In *Hartson* v. *Dill,* 151 Cal. 137 [90 P. 530], the Supreme Court held that the rights of the respective parties were to be determined by the construction to be given to the terms of two separate decrees entered in suits between the same parties. At page 142, the court stated: ''Aside from the proper construction to be placed upon the provisions of this decree, it is insisted by appellant that the court erred in rulings respecting evidence offered by him. We do not think so. It was not a proper subject of inquiry as to what the parties to the first decree understood its scope should be. The decree itself determined that matter.'' In *Kirkpatrick* v. *Harvey, supra,* 51 Cal.App.2d 170, an action was brought upon a judgment which had been rendered against both the defendant and her husband. The defendant asserted that the nature of the obligation upon which the prior judgment was based was such that she should be shielded from it by her husband's subsequent discharge in bankruptcy. With respect to her offer of evidence in support of her defense, the court stated that the ''proffered proof amounted to nothing more than a collateral attack upon the judgment sued on and was properly rejected'' (p. 173).

In *Gosnell* v. *Webb,* 60 Cal.App.2d 1, at page 4 [139 P.2d 985], this court in reaching the conclusion that the trial court had erroneously ''decided that the interlocutory decree was not what it appeared to be, but was something else,'' stated, at page 4: ''It is not permitted, in this proceeding for an order of modification, collaterally to attack the decree by evidence that it is not what it appears to be, or that it is not in accordance with the agreement of the parties. (*Niel-*

*sen* v. *Emerson* (1931), 119 Cal.App. 214, 218 [6 P.2d 281], and cases cited.)''

In the Nielsen case, cited in the Gosnell case, the court said at page 218: ''It is further claimed that the judgment having been entered by consent, it is not effective as a bar or estoppel; but, as held in the following cases, a stipulation or consent judgment as to matters in issue is as conclusive as one rendered upon contest and trial (*McCreery* v. *Fuller,* 63 Cal. 30; *City of Oakland* v. *Oakland Waterfront Co.,* 162 Cal. 675, 686 [124 P. 251]; *Moore* v. *Schneider,* 196 Cal. 380 [238 P. 81]). Nor may such a judgment be collaterally attacked by a party to it upon the ground that it does not conform to the stipulation. While a judgment is erroneous which fails to conform to a stipulation, and the error may be corrected on appeal (*People's Ditch Co.* v. *Fresno Canal & Irr. Co.,* 152 Cal. 87 [92 P. 77], nevertheless it may not be collaterally attacked by a party on this ground (*Semple* v. *Wright,* 32 Cal. 659; *Hobbs* v. *Duff,* 43 Cal. 485).''

We turn then to the question of whether the judgment itself contains any ambiguity which could properly be resolved by resort to extrinsic evidence. The language which is claimed to be in conflict with the statement that the sum of $16,200 is payable ''[s]olely by way of property settlement, and not as payment of alimony or support and maintenance,'' is that set forth above as subsection (h) which states in part: ''As an express condition of the foregoing awards of the claimed community property of the parties, it is ordered that, upon the death or remarriage of plaintiff, any and all payments required to be made by defendant pursuant to subparagraph (d) hereof shall cease and terminate, and defendant shall have no further liability or obligation thereon. . . .'' But it is to be noted that the nature of the payments is emphasized by the use of the introductory language which is: ''[a]s an express condition of the foregoing awards of the claimed community property of the parties.'' Moreover, there is no provision in the judgment that the obligation of the defendant to make the payments is to cease upon his death. (See Civ. Code, § 139; *Lane* v. *Bradley,* 124 Cal.App.2d 661, 666 [268 P.2d 1092]; *Hamilton* v. *Hamilton,* 94 Cal.App.2d 293, 298 [210 P.2d 750].)[4] While an express provision that monthly pay-

[4]The interlocutory judgment provided that the defendant should maintain in effect, "for the entire period during which the payments pursuant to paragraph 2(d) of this Judgment have been ordered to

ments to the wife are to cease upon her death or remarriage may commonly be found in agreements or judgments providing for an award of alimony, support or maintenance (see *Lazar* v. *Superior Court,* 16 Cal.2d 617, 621 [107 P.2d 249] ; *Kelley* v. *Kelley,* 151 Cal.App.2d 228, 235 [311 P.2d 90]), a provision for periodical payments in settlement of property rights may also so provide without thereby transforming the payments into the nature of alimony, support or maintenance, since there is no impediment to the parties so agreeing. (See *Fields* v. *Fields,* 94 Cal.App.2d 56, 59 [209 P.2d 977] ; *Fox* v. *Fox,* 42 Cal.2d 49, 53 [265 P.2d 881] ; *cf. Hogarty* v. *Hogarty,* 188 Cal. 625 [206 P. 79].) It was said in the Fields case, at page 59: "Similarly, the provision that the weekly payments were to continue until the death or remarriage of plaintiff rather than until a specific sum had been paid, does not preclude a holding that they are in lieu of specific property (see *Ettlinger* v. *Ettlinger,* 3 Cal.2d 172 [44 P.2d 540]) although such provisions, without more, are generally regarded as indicative of alimony."

"Individual clauses or provisions of a judgment, just as in a contract or any other document, are not to be separately considered and construed but, on the contrary, the entire document is to be taken by its four corners and construed as a whole to effectuate the obvious intention." (*Lazar* v. *Superior Court, supra,* 16 Cal.2d 617, 622.)

Pertinent language is found in *Rilovich* v. *Raymond, supra,* 20 Cal.App.2d 630, at page 639: "Parol evidence is admitted where uncertainty exists as to the meaning of a contract to show what the parties meant by what they said, but it is not admitted to show that they meant something other than what they said." There is no uncertainty or ambiguity to be found in the judgment in question and extrinsic evidence was improperly considered by the trial court in reaching its conclusion as to its proper construction. (*Brant* v. *California Dairies, Inc.,* 4 Cal.2d 128, 133 [48 P.2d 13].) Under such circumstances, the matter should not be returned to the trial court to determine the proper construction of the judgment. As said in *Estate of Platt,* 21 Cal.2d 343, at page 352 [131 P.2d 825] : "An appellate court is not bound by a construction of the contract based solely upon

be made," a certain National Service Life Insurance policy, with plaintiff as primary beneficiary thereof, which policy should be "collateral for the performance of defendant's obligations under said paragraph 2(d)."

the terms of the written instrument without the aid of evidence (*Brant* v. *California Dairies, Inc.,* 4 Cal.2d 128 [48 P.2d 13]; *Boyer* v. *United States Fidelity & Guaranty Co.,* 206 Cal. 273, 279 [274 P. 57]; *O'Connor* v. *West Sacramento Co.,* 189 Cal. 7, 17 [207 P. 527]; *Estate of Thomson,* 165 Cal. 290 [131 P. 1045]; *Mitchel* v. *Brown,* 43 Cal.App.2d 217 [110 P.2d 456]; *Wall* v. *Equitable Life Assur. Society,* 33 Cal.App.2d 112 [91 P.2d 145]; *Texas Company* v. *Todd,* 19 Cal.App.2d 174 [64 P.2d 1180]), where there is no conflict in the evidence (*Moffatt* v. *Tight,* 44 Cal.App.2d 643 [112 P.2d 910]), or a determination has been made upon incompetent evidence (*Rilovich* v. *Raymond,* 20 Cal.App.2d 630 [67 P.2d 1062]). Under these circumstances, there is no issue of fact, and it is the duty of an appellate court to make the final determination in accordance with the applicable principles of law.''

 "It is to be recognized that the term 'alimony' does not contemplate a settlement of property interests or general endowment of wealth." (*Bradley* v. *Superior Court,* 48 Cal.2d 509, 522 [310 P.2d 634].) "The parties are free to limit their agreement to property rights. They may, for example, agree to a simple division. Or they may agree that one party is to receive the lion's share of the marital property and the other money payments, not in satisfaction of a statutory right to support, but solely to equalize the division of the marital property; such an agreement is a true property settlement unconcerned with rights and duties as to support." (*Plumer* v. *Plumer,* 48 Cal.2d 820, 823-824 [313 P.2d 549].) In the present case, it is apparent from the judgment itself that the provision in question is not one for alimony, support or maintenance but is of the nature of a debt incurred in effecting a property settlement. It is similar in nature to the provisions for installment payments held to be released by a discharge in bankruptcy in the cases, cited above, of *Fernandes* v. *Pitta,* 47 Cal.App.2d 248 [117 P.2d 728], and *Tropp* v. *Tropp,* 129 Cal.App. 62 [18 P.2d 385]. The clear and concise determination in the interlocutory judgment in this case of the nature of the payments was in harmony with the goal of avoiding confusion and uncertainty in such decrees. (See *Puckett* v. *Puckett,* 21 Cal.2d 833, 841 [136 P.2d 1].) The trial court determined the character of the agreement between the parties at the time of ordering the entry of the interlocutory judgment as it was its duty to do. (See *Adams*

v. *Adams,* 29 Cal.2d 621, 625 [177 P.2d 265]; *Weedon* v. *Weedon,* 92 Cal.App.2d 367, 369 [207 P.2d 78]; *Fields* v. *Fields, supra,* 94 Cal.App.2d 56, 60.)

Some claim is made that the parties actually intended to provide for payments for the support and maintenance of the wife but made the provision in the form of a disposition of property rights because of certain income-tax advantages which would thereby accrue to the wife. As stated above, the parol evidence rule precludes the consideration of such claim. Moreover, this case does not fall within those authorities which hold that evidence is admissible to show that the parties had agreed that a writing signed by them was to be a sham or artifice or was otherwise to be of no binding effect. (See *P. A. Smith Co.* v. *Muller,* 201 Cal. 219, 222-223 [256 P. 411]; *Monica* v. *Pelicas,* 131 Cal.App.2d 700, 704-705 [281 P.2d 269]; *Parker* v. *Meneley, supra,* 106 Cal.App.2d 391.) Such evidence is considered as negating the very existence of the written instrument as one of legal effect rather than as varying its terms. Here the parties intended that a judgment should be based on their agreement. The parties complied with the provisions thereof prior to the event of the defendant's bankruptcy. The judgment was a binding determination of their rights and is not subject to collateral attack herein.

The judgment is reversed with directions to the trial court to amend its findings of fact and conclusions of law in accordance with the views herein expressed and thereupon to enter judgment in conformity therewith.

Shinn, P. J., and Vallée, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 13, 1960.