**In re Carl G. BAKER, individually and t/a Carl G. Baker/Architects.**

**Bankruptcy No. 79–292.**

United States Bankruptcy Court,
W. D. Pennsylvania.

Oct. 23, 1981.

Edward C. Leckey, Pittsburgh, Pa., for debtor/plaintiff.

John J. Petrush, Beaver Falls, Pa., for defendant.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

### HISTORY OF CASE

### BANKRUPTCY PROCEEDINGS

This case has a long and complicated history. It is a case that is governed by the former Act (11 U.S.C. § 1 et seq) not the new Code (11 U.S.C. § 101 et seq enacted November 6, 1978). On April 11, 1979 at 79–292, Carl A. Baker individually and trading as Carl G. Baker/Architects filed a Voluntary Petition. (Additionally on April 11, 1979 at 79–293 the Baker Company t/a Carl G. Baker/Architect also filed a Voluntary Petition.) On July 3, 1979, the Trustee issued his report of Exempt Property with regard to Carl Baker at 79–292. On July 10, 1979, a Discharge of Bankrupt was issued by Judge Bernhard Schaffler. Included in a list of creditors at Schedule A–3 "Creditors Having Unsecured Claims Without Priority" is:

Linda P. Baker
290 Seventh Street
Patterson Heights
Beaver Falls, Pa.   15010

Amount of Claim

$5,400.00

It appears that the consideration for the above scheduled indebtedness was the separation Agreement settling matters of support and property division between the parties who were contemplating divorce proceedings in Common Pleas Court of Beaver County, which is the subject of the dispute here.

## BEAVER COUNTY PROCEEDINGS

On or about June 4, 1979, Linda P. Baker at No. 979 of 1979 in the Court of Common Pleas of Beaver County attempted to enforce the subject disputed agreement against Carl G. Baker. On June 22, 1979, Carl Baker by way of Preliminary Objections raised the bankruptcy stay provided in Bankruptcy Rule 401. Linda P. Baker placed the above Preliminary Objections at issue for August 20, 1979, ostensibly on the belief that the Agreement was not dischargeable under Section 17(a) of the Act and could be heard by Beaver County Court.

## INSTANT PROCEEDING

### BANKRUPTCY COURT DISCHARGE-ABILITY OF SEPARATION AGREEMENT

On August 13, 1979 in Bankruptcy Court, Carl Baker, Jr. filed a Complaint before Judge Schaffler (1) to restrain Linda P. Baker from proceeding at No. 979 of 1979 in the Court of Common Pleas in Beaver County, so that the issue of dischargeability would be determined in Bankruptcy Court; (2) praying that the disputed Agreement be found to be a property settlement and not a support agreement; and (3) asking the Court to determine that all payments called for in the disputed Agreement in excess of Carl G. Baker's legal obligation for support of the minor children be discharged.

On August 14, 1979, Judge Schaffler restrained Linda P. Baker from continuing the proceedings in No. 979 of 1979 in Common Pleas Court of Beaver County pending the proceedings in Bankruptcy Court to determine dischargeability.

On September 10, 1979, Linda P. Baker Answered the Complaint and Counter-claimed, raising five defenses and a counterclaim. One of the defenses (Second Defense) raised the timeliness of Carl Baker's action, alleging that Carl A. Baker's action was barred by Rule 409(a)(1) and (2) because it was not filed by July 9, 1979, the last day set for complaints to determine dischargeability. The Counterclaim prayed for damages for non-payment of support plus interest at 6% and for specific performance and such other relief as is just for enforcement.

On December 13, 1979, Carl Baker replied to the Counterclaim.

Beginning October 19, 1979, requests for production of documents and motions to compel discovery ensued. Both parties attempted extensive inquiries into post divorce financial activities. Motions compelling discovery followed, which motions have been dismissed. An appeal of one of these dismissal orders was taken by Carl G. Baker to the District Court and is now pending on appeal before the Third Circuit Court of Appeals.

Several status conferences were held and the matter set for trial several times. The Plaintiff Carl G. Baker requested delay of this hearing pending the outcome of the above appeal. The Court required the hearing to go forward unless Carl G. Baker made the payments as required by the Agreement pending the appeal.

APPLICABLE STATUTE

The parties agree that the case is governed by Section 17(a)(7) of the Bankruptcy Act, 11 U.S.C. § 35(a)(7), which provides in pertinent part that "(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts . . . except such as . . . (7) are for alimony due or to become due, or for maintenance or support of wife or child . . ."

■■■ Bankruptcy Courts under the new Code and under the former Act may look behind the mere recitations of the Agree-

ment and look to the substance of the matter. To this end the parties were permitted to present extrinsic evidence on this issue. *Brown v. Felson*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). See also this Court's decision in *In re Massamini*, 8 B.R. 428 (Bkrtcy.1981).

The parties agree that the words characterizing the Agreement may not be conclusive. Nevertheless, Defendant urges the Court to read the plain language and the entire Agreement as capturing the intent of the parties in the Agreement. See *In re Salenas*, 2 B.C.D. 864 (D.Or.1976); *In re Ingram*, 5 B.R. 232, 235 (Bkrtcy., N.D.Ga. 1980); *In re Avery*, 114 F.2d 768 (6th Cir. 1940); *Battle v. Battle*, 205 Okl. 587, 239 P.2d 794, 795 (1952).

The Defendant Linda P. Baker argues that the Agreement's express terms are clear and that family support including the mother and minor children was intended. Defendant argues that tax liability was imposed upon her to achieve a tax benefit for Plaintiff and thus became a part of her living expenses and separate maintenance.

The Plaintiff urges the Court to look to the negotiation which preceded the Agreement as providing the real meaning. See *Adler v. Nicholas*, 381 F.2d 168 (5th Cir. 1967); *Nicholas v. Hensler*, 528 F.2d 304 (4th Cir. 1975); *Avery v. Avery*, 114 F.2d 768 (6th Cir. 1940); *In re Smith*, 436 F.Supp. 469 (N.D.Ga.1977).

As viewed by the Plaintiff Carl A. Baker, the $1,350 monthly payment in paragraph 5 of the Agreement consisted of $800 for child support, $300 as a property settlement for Bayberry Apartments and $250 to compensate the Defendant for the payment of taxes because the entire amount was called Family Support, thus causing the Defendant to include the $1,350 in her income and allowing the Plaintiff a deduction.

FINDING OF FACTS

Plaintiff Carl A. Baker and Defendant Linda P. Baker were married on June 7, 1961. Both were young, the wife, Linda P. Baker, had only graduated from high school three days prior to the marriage.

Three (3) children were born of this marriage, Carl G. Baker, March 7, 1962; David M. Baker, May 14, 1966; and Bryce P. Baker, May 30, 1967. One miscarriage and possibly two occurred.

About September, 1968 the parties separated and entered into negotiations over property and support. Both were represented by Attorney John G. Good, Jr., who prepared several drafts and the final agreement which was signed by both parties. Attorney Good and Carl G. Baker called upon a CPA, Leroy Padgett, for advice concerning this Agreement. Attorney Good and CPA Padgett were employed by the Baker family for other matters and enjoyed a close professional relationship with the Baker family for a considerable period of time.

From about January of 1969 to about January of 1979 the Agreement was observed by the parties.

This Agreement was not made a part of the divorce decree. It was entered into by parties just prior to divorce. It was not a part of the proceeding before the Family Division of the Court of Common Pleas of Beaver County.

The Agreement's major paragraphs provide for the following disposition of property which are not disputed:

(a) (Paragraphs 2, 3, 6) for the family residence and adjacent separate lot and jointly held real estate.

(b) (Paragraph 4) for an automobile for the wife.

(c) (Paragraph 7) for their furniture.

(d) (Paragraph 8) for the Bayberry Apartment Building.

(e) (Paragraph 9) for their cash assets.

(f) (Paragraph 11) for their attorney fees.

The dispute in this proceeding involves paragraph 5, which is shown below:

The Husband hereby agrees to pay to the Wife for support of the said family, including the mother and three minor children, namely, Linda P. Baker, mother; Carl G. Baker, Jr., born March 7, 1962;

David Marshall Baker, born May 14, 1966; Bryce Patrick Baker, born May 30, 1967, the sum of $1,350 per month commencing the first day of January, 1969, and a like and equal sum on the first day of each month thereafter, and, further, the Husband, for and in consideration of this agreement, agrees to pay to the Wife the sum of $20,000 in a lump sum payment in cash on or before March 1, 1969.

The family support payment of $1,350 per month shall remain in full force and effect so long as the above-named minor childred are legally dependent upon the Husband, and said sum of support is computed upon the Husband's present annual income of $40,000 per annum, it being the intention of both parties to this agreement that said family support shall be renegotiable at any time there is a change in the circumstances as herein set forth.

In addition to the payments hereinabove set forth, the Husband further agrees to pay for and be responsible for all necessary medical and dental expense incurred on behalf of the above-mentioned minor children.

The Wife agrees that she will, commencing with the taxable year 1969 and thereafter, include as part of her taxable income the separate maintenance payments as hereinabove set forth, to wit: the sum of $1,350 per month commencing January 1, 1969.

The plain language of paragraph 5 describes several matters. It provides for a $20,000 lump sum payment. The parties dispute the underlying purpose for this $20,000 payment. The Defendant asserts that this $20,000 payment represented her share of Bayberry Apartments (paragraph 8). The Plaintiff disagrees and asserts that this $20,000 represented Defendant's share of the proceeds of the sale of Cook Farm and the cash assets of Modu, a corporation owned by Plaintiff. In any case, the $20,000 payment was a property settlement and not support.

█ Paragraph 5 contains a paragraph obligating the Plaintiff for medical and dental expense of the children. This is clearly a support obligation and is not dischargeable.

The disputed portion of paragraph 5 provides the following language:

> . . . to pay to the Wife for the support of the said family, including the mother and three minor children, namely; Linda P. Baker, mother; Carl G. Baker, Jr., born March 7, 1962; David Marshall Baker, born May 14, 1966; Bryce Patrick Baker, born May 30, 1967, the sum of $1,350 . . .

This language sounds in support. In addition, the last paragraph of paragraph provides that:

> The Wife agrees that she will, commencing with the taxable year 1969 and thereafter, include as part of her taxable income the separate maintenance payments as hereinabove set forth, to wit: the sum of $1,350 per month commencing January 1, 1969.

This language also sounds in support.

In order to dispute the language, the Plaintiff presented evidence attempting to show that in the negotiations which preceded the final agreement, a lesser sum of $800 per month for support was the "underlying" understanding of the parties. This evidence was disputed by the Defendant's testimony at trial.

The Plaintiff presented evidence attempting to show that during the negotiations he had offered $300 per month for five years as a *property* settlement for Defendant's interest in the Bayberry Apartments. This evidence was also disputed by the Defendant, who presented evidence that although this offer for Bayberry was initially acceptable to her, she rejected it before the final agreement and desired a lump sum payment.

Both parties agree that Defendant demanded an initial cash payment be made to her, because after being a mother and housewife for the years after high school she had no opportunity for college training, etc., and needed capital to start her separate life. The parties dispute how this was accomplished.

It is obvious from the Exhibits that negotiations occurred on September 11, 1968, September 26, 1968, October 12, 1968 and on other occasions until the Agreement was signed on January 24, 1969. During that period Mr. Padgett, a CPA, was consulted. It appears that Padgett recommended that if the monthly payments could be characterized as support, a tax advantage would be achieved for the Plaintiff and that the Plaintiff would also be able to make larger payments to the Defendant and thus achieve a result desired by both parties. This concept required the payments to be taxable to the Defendant.

Evidence was introduced tending to show that the early proposal by Plaintiff for an $800 support payment and $300 property payment for Defendant in property interest in the Bayberry Apartments would provide the Defendant with $1,100 monthly payment which she had demanded. Further, that if that $1,100 sum were taxable to the Defendant, an additional $250 would be needed to compensate for increased taxes. The Plaintiff argues that the $1,350 agreement for support was constructed with this concept in mind.

The Defendant disputes the idea that she agreed to the $1,100 monthly payment by including the $300 per month formerly intended to be property settlement for Bayberry Apartments. Defendant testified that she was advised by a lawyer friend to demand more than $800 for support and did so. Further, she had demanded a financial statement from the Plaintiff in order to evaluate his ability to pay and that this statement was not provided but that the offer was increased.

With regard to the Defendant's interest in the Bayberry Apartments, the Plaintiff's original or early offer of $300 per month for five years would have produced $18,000 (no interest payment). The signed Agreement, which is being disputed here, called for the support payments to continue until the last child reached his majority. This would have provided for approximately 19–20 years of payments, a much larger sum, approximately $72,000.

Paragraph 5 of the Agreement also recites in the second paragraph that the $1,350 per month "sum of support is computed upon the Husband's present annual income of $40,000 per annum." Defendant argues that the $1,350 is support related to the $40,000 per annum income and not to other factors as is set forth in paragraph 5 quoted above.

ANALYSIS

It is clear that the Plaintiff and his tax advisors attempted to structure the support paragraph so that it would be favorable to the Plaintiff for tax purposes and would withstand IRS examination as support payment. For purposes of our analysis, if it is assumed that the Bayberry property payments were characterized from the Plaintiff's view as support only for tax purposes, that characterization also provided the desired additional payments requested by the Defendant. The evidence is not clear to the Court that the Defendant agreed to these terms for the same reasons or by the same analysis as desired by the Plaintiff. Nor was it necessary for the parties to have such understanding to agree to the actual language. The Defendant now rejects any characterization of these support payments as including the Bayberry property and asserts that was not her understanding. Mr. Padgett, the CPA, is now dead and his input to these negotiations over 13 years ago is from sketchy and limited exhibits. They are logical from the point of view of the Plaintiff's CPA tax advisor. They give insight into the state of mind of the CPA and his advice to the Plaintiff. They do not contribute to the understanding of the Defendant and her state of mind when she signed the Agreement.

Neither party's explanation of the negotiations which preceded this final Agreement is completely consistent or logical, but that is to be expected under these circumstances. It would be unusual if the parties could reconstruct with clarity the negotiation of this Agreement which occurred over a period of five months (September, 1969—January, 1970) over thirteen years ago.

This Court believes that it has a duty to ferret out the substance of the transaction. *In re Smith*, 436 F.Supp. 469, 476. (See other citations.)

The District Court *In re Smith* on an appeal of the Bankruptcy Court considered a similar problem and sustained the Bankruptcy Court. In the *Smith* case, a marriage of 16 years was dissolved. The husband debtor was attempting to discharge a property settlement. The agreement provided for support for two children, which was not disputed. It provided for $100.00 per month of alimony for 108 months, at which time the alimony was to increase to $1,900 as long as the wife had not remarried. The dispute involved another paragraph which provided a "property" settlement of 108 monthly payments of $1,900.00. In the *Smith* case the wife was seeking to prove that the words property settlement, $1,900 per month for the first 108 months was really alimony and that it was described in the agreement as property so that it would not be taxable to her because the husband's source of the funds was tax sheltered income which the parties desired to remain tax sheltered.

In making its determination, the Smith Court was influenced by the agreement itself which increased the alimony after the so-called property settlement was to be completed. The Court took into account the total amount she required to run the household, etc. and the desire of the parties for favorable tax treatment.

In the *Smith* case, the characterization of the first 108 monthly payments as property were desired to benefit Mrs. Smith from a tax viewpoint. It was also the sum which the Court determined was needed in order to support Mrs. Smith.

In the instant case the Plaintiff argues that a portion of the payment clearly labeled support was a disguised property amount. The evidence presented was not definitive of this question. The Court must look to the Agreement itself for guidance.

Is this Agreement, by its terms, consistent with the result that a young wife with three young children could have extracted that amount of support from a husband with approximately $40,000 annual income in 1969? The plain meaning of the language of the Agreement appears under these circumstances to achieve a reasonable result. The evidence presented by Plaintiff was not of such weight as to require a Court in Bankruptcy to reconstruct the plain language of a 13 year old agreement and to find a hidden property settlement.

■ Although, the cases clearly permit a Bankruptcy Court to examine extrinsic evidence and to determine if an agreement is what it claims to be, where an agreement is within a corridor of reasonableness, the burden is heavy on the party disputing the plain language to show that the agreement clearly contains a "hidden" property settlement.

■ The Agreement by its plain language in three different places calls the payments "support" and "maintenance".

The Agreement was to last until the last child was no longer a minor or about 20 years.

The Agreement specifically describes almost all of their property in other paragraphs.

The Agreement was observed for approximately ten years.

The evidence provided by the Plaintiff, if accepted by the Court, are indicative of the Plaintiff's motives and purposes, but that evidence is not proof of the Defendant's understanding especially when the Defendant specifically denies and asserts another view.

For these reasons, this Agreement is not discharged. We find the monthly payment in the disputed paragraph an agreement for maintenance and support of a former wife and minor children.

An appropriate Order will be entered.

Plaintiff raises an additional issue which is not decided here and is reserved. Paragraph 5 also provides for renegotiation of this support "at any time there is a change in the circumstances as herein set forth."

**116**

Defendant argues that the "circumstances" are limited to a change in the husband's annual income of $40,000. Plaintiff argues that Defendant was only willing to negotiate upwards, not downwards, etc., and that this constitutes bad faith and breach. These issues are not resolved here.

The Common Pleas Court of Beaver County has jurisdiction to decide whether a change in circumstances has occurred, and whether this support agreement requires change.

This Court only decides that the disputed monthly payment was for support and is not dischargeable in bankruptcy. The Defendant requests damages plus interest and for specific performance A judgment for damages will be entered upon affidavit of the parties as to the payments due and owing.